

February 3, 2022

Kenneth P. Herzinger, Esq.
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: 415-856-7000

  Re: *Friel v. Dapper Labs, Inc., et al.*, No. 1:21-cv-05837-VM (S.D.N.Y.)

Dear Mr. Herzinger:

  Basketball cards are not securities, but NBA Top Shot Moments are not basketball cards. As pleaded in the Complaint, Defendants sold crypto assets called Moments to Plaintiffs that could only be sold in the secondary Marketplace that Defendants completely controlled and profited from. Moments are securities under the test that the Supreme Court set out in *SEC v. W.J. Howey Co.*, because they involve (i) an investment of money; (ii) in a common enterprise; (iii) with the expectation of profits to be derived solely from the efforts of others. 328 U.S. 293, 298-99 (1946). Moments easily meet every element of the *Howey* test, and in fact are similar to assets that other courts have found to be securities, both on and off the blockchain.

  1. Common Enterprise

  The second prong of the *Howey* test – that plaintiffs invested in a "common enterprise" – can be satisfied by a showing of either vertical or horizontal commonality. A plaintiff can plead vertical commonality by showing that "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 353, n.10 (S.D.N.Y. 2019). Alternatively, in an enterprise marked by horizontal commonality, "'the fortunes of each investor in a pool of investors' are tied to one another and to the 'success of the overall venture.'" *Id*. at 353. Here, because Dapper Labs takes a percentage of all transactions that occur in the secondary Marketplace, and because the fortune of Plaintiffs' investments in Moments is tied to that of other Moment investors and to the success of Dapper Labs and its new Flow blockchain, both forms of commonality are met.

  A. Vertical Commonality

  Dapper Labs relies on *Marini v. Adamo*, 812 F. Supp. 2d 243, 256-61 (E.D.N.Y. 2011) to argue that Plaintiffs have failed to plead strict vertical commonality. But in *Marini*, the defendant's motion for summary judgment arguing lack of vertical commonality was denied. *Id*. at 260-61. Moreover, it was denied for the exact same reason that vertical commonality exists here: In *Marini*, a case brought against a dealer of rare coins, plaintiff alleged that the coin dealer profited not just from the initial purchase of the coins, but ***also that the coin dealer earned a commission on the plaintiff's eventual sale of the coins***. *Id*. at 259-61. This fact linked the plaintiff's and the defendant's fortunes for the purposes of strict vertical commonality:

> [O]ther courts have found that, where an investment manager, such as Adamo, earns a fee based on the ultimate performance of an investment, strict vertical commonality does exist. . . . [B]ecause disputed issues of material fact exist as to whether Adamo earned a commission upon the sale of Marini's coins, the Court cannot determine as a matter of law whether Adamo's and Marini's fortunes were inextricably linked for purposes of establishing the existence of a common enterprise.

*Id.* at 260-61 (E.D.N.Y. 2011). Here, Dapper Labs earns a fee on all transactions in the secondary Marketplace, which is the only place that investors can sell their Moments. ¶¶66-67. This is precisely the type of "sales-based commission" that ensures that strict vertical commonality is met.[1] *See id.* And contrary to Dapper Labs' suggestion, there is nothing in *Marini* finding that the "joy in collecting" that one might derive from collecting coins – or digital assets reflecting a basketball highlight – forecloses one's rights under the securities laws.

B. Horizontal Commonality

Horizontal commonality is met as well. The fortunes of Moment investors are linked in the same way the fortunes of investors in other crypto ventures have been found to be linked: The proceeds of investors' purchases in Moments are pooled together in the hands of Dapper Labs, which uses the money to stir up interest in the Marketplace for Moments and build out its Flow blockchain, further driving interest, traffic, and money to the NBA Top Shot platform. *See Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 354 (S.D.N.Y. 2019) (finding horizontal commonality existed in sale of virtual tokens, reasoning "Although Defendants insist that purchasers of the ATB Coin 'gained no share in a common enterprise, but rather exercised individual control over the ATB Coin asset,' Plaintiff plausibly alleges that the 'potential profits stemming from the future valuation of the ATB Coins [ ] w[ere] entirely reliant' on the success of Defendants' new blockchain" (citations omitted) (alteration in original); *see also Rensel v. Centra Tech, Inc.*, 2018 WL 4410126, at *5 (S.D. Fla. June 25, 2018) (finding a common enterprise where "the fortunes of individual investors in [Defendants'] ICO were directly tied to the failure or success of the products the Defendants purported to develop").

The recent *Balestra* case also rejected the same arguments that Dapper Labs makes here concerning the lack of dividends or pro-rata distribution of profits. *See Balestra*, 380 F. Supp. 3d at 354 ("Defendants correctly note that ATB Coins did not entitle purchasers to a pro rata share of the profits derived from any ATB-managed transaction. However, such a formalized profit-sharing mechanism is not required for a finding of horizontal commonality"). The *Balestra* case found the SEC's cease-and-desist order against Munchee, which sold digital "MUN tokens" to the public, to be instructive on this point. *See id.* "The SEC concluded that the MUN token was a security, even though it 'did not promise investors any dividend or other periodic payment.' Rather, investors were led to believe that as more individuals began using the MUN 'ecosystem,'

---

[1] In addition, courts have found strict vertical commonality to be met when investors in crypto assets depend on the success of the promoter's product or blockchain. *See SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 370-71 (S.D.N.Y. 2020) ("[T]he SEC has made a substantial showing of strict vertical commonality. Each Initial Purchaser's anticipated profits were directly dependent on Telegram's success in developing and launching the TON Blockchain").

the value of investors' MUN tokens would increase." *Id.* (internal citations omitted). The same is true here, as Moment investors are entirely dependent on Dapper Labs' ability to maintain high levels of interest in the Top Shot Marketplace, as well as the Flow blockchain and "ecosystem."

Finally, Dapper Labs is incorrect that the unique nature of each Moment makes it a non-security. Dapper Labs' contention that each Moment is individually numbered and limited simply shows Dapper Labs' ability to manufacture scarcity in an attempt to increase demand and value (highlighted by the fact that Defendant Gharegozlou owns a collection of early-acquired Moments worth, on paper, over $10 million, ¶¶102-03). While fungibility is a useful aspect of many securities, because it helps create a liquid secondary market, it is not a requirement. For example, an exotic over-the-counter option might not be fungible, and the rare coins at issue in *Marini* might not be fungible either, if they have a unique serial number or other marking. Yet both are still capable of being securities under *Howey*. Plaintiffs have pleaded both types of commonality, though only need to plead one to meet the *Howey* test.

2. Profits Based on the Efforts of Dapper Labs[2]

Dapper Labs claims that investors could have no reasonable expectation of profit because its user agreement requires investors to use Moments "primarily as objects of play and not for investment," and also argues that the tweets and podcast quotations marketing Moments in terms of potential profit are taken "out-of-context." But to the contrary, it is the fine print in Dapper Labs' user agreement that is out of context, because the context and hype and allure surrounding Moments has always been largely based on one thing: Money. *See, e.g.,* ¶79 ("Buried in its Service Terms of Use, Dapper requires its users to agree that they 'are using NFTs primarily as objects of play and not for investment or speculative purposes.' This provision would be laughable were it not so disturbingly contradictory and absurdly self-serving. The reality is that the growing fanatical NBA Top Shot database is all about the investment"); ¶59 ("'These are investments,' he [Schwarz] says. 'That Lebron that I bought for $208,000 was worth seven figures right away. And, that's a big reason why I bought it.'"). Lest Dapper Labs argue that the outside world is simply mistaken, the Complaint cites examples of Defendants themselves linking Moments with potential profits. *See* ¶65 (official Top Shot tweets touting the soaring prices of Moments in the secondary Marketplace); ¶80 (Defendant Gharegozlou explaining that, unlike attending basketball games, investing in Moments allows one to "**benefit financially from it, and have skin in the game**.").

Because investors can only realize these potential profits from transacting in the secondary Marketplace that is controlled by – and dependent on – Dapper Labs, investing in Moments is radically different from buying cardboard basketball cards or silver bars, another inapposite case on which Dapper Labs relies. *See Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980).

The Moments that Defendants sold to investors satisfy the *Howey* test, and are therefore unregistered securities. Plaintiffs' claims are well-pleaded, and should not be dismissed.

---

[2]     While the third prong refers to "profits to be derived solely from the efforts of others," the Second Circuit has established that "the word 'solely' should not be construed as a literal limitation" and that the test is met where the promoter's efforts are the "undeniably significant ones[.]" *See Balestra*, 380 F. Supp. 3d at 354-55 (citations omitted).

Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

/s/ *Phillip Kim*
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Michael Cohen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: mcohen@rosenlegal.com

*Counsel for Plaintiffs and the Class*

cc:     Honorable Victor Marrero (By ECF)