

February 22, 2022

<u>By ECF</u>

The Honorable Victor Marrero
United States District Judge, Southern District of New York
500 Pearl Street, Suite 1610
New York, NY 10007

Re:      <u>*Friel v. Dapper Labs, Inc., et al.*</u>, No. 1:21-cv-05837-VM (S.D.N.Y.)

To the Honorable Judge Victor Marrero:

Despite exchanging meet-and-confer letters, Dapper and Plaintiffs did not reach agreement on whether this Court should dismiss Plaintiffs' claim that the digital basketball cards Dapper sells as Moments are actually "securities" within the meaning of federal securities laws.  As Dapper explained, courts have consistently held that collectibles and art are not "investment contracts" (and thus, not "securities") under the *Howey* Test.  Tradable sports cards have been collected since Americans fell in love with organized sports.  In that time, no law has suggested such cards were actually securities in disguise.  Plaintiffs' claims should be dismissed.  Dapper pointed to specific deficiencies in Plaintiffs' allegations, but Plaintiffs disagreed and chose not to amend their amended complaint ("Complaint" or "AC").  A motion is therefore necessary.

Consistent with Your Honor's practices, Dapper requests a conference with the Court followed by full briefing on its motion to dismiss.  While the parties did not reach agreement on the merits of the motion, they did agree on the following:  (1) Roham Gharegozlou, Dapper's CEO, agreed to accept service such that he could join in the upcoming motion to dismiss without needing to engage in a further exchange of letters; (2) Dapper and Mr. Gharegozlou would have a combined 35 pages for their opening brief and 45 days from this Court's agreement in which to file the motion; (3) Plaintiffs would have 45 days from the filing of the opening brief to file their opposition brief and 35 pages in which to file it; and (4) Dapper and Mr. Gharegozlou would have 15 pages and 30 days for a reply.  Given the volume of issues (including discussion of the broad set of materials incorporated by reference in the AC), Dapper respectfully suggests that both the additional pages and time are appropriate as not everything could be covered in these short letters beyond broad strokes.  *See, e.g.*, *Amidax Trading v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (discussing role of materials referenced in complaint in motion to dismiss); *Griffin v. Sheeran*, 767 F. App'x 129, 132 (2d Cir. 2019) (discussing full briefing).

Per Your Honor's Individual Rules, Dapper attaches as exhibits the meet-and-confer letters. Dapper also identifies at a high-level those areas where disagreement remains, and which would be described in greater detail in the briefing.

**No Strict Vertical Commonality.**  The parties did not reach agreement on whether Plaintiffs have pleaded sufficient plausible facts to show strict vertical commonality (as applied to *Howey*'s "common enterprise" test).  For those courts that allow it, strict vertical commonality



February 22, 2022
Page 2

requires that "the fortunes of plaintiff and defendants are linked so that they rise and fall together." *Jordan (Berm.) v. Hunter Green*, 205 F. Supp. 2d 243, 249 (S.D.N.Y. 2002) (citations omitted). This link must be "inextricabl[e]." *Marini v. Adamo*, 812 F. Supp. 2d 243, 261 (E.D.N.Y. 2011). The cases make plain that if a promoter can *ever* make money when an investor loses money, there is no strict vertical commonality. *See Gugick v. Melville Cap.*, 2014 WL 349526, at *5 (S.D.N.Y. Jan. 31, 2014). Thus Plaintiffs must plead "not only that the defendants' and [their] fortunes rise together, but also that their fortunes *will fall together*." *Mechigian v. Art Cap.*, 612 F. Supp. 1421, 1427 (S.D.N.Y. 1985) (emphasis added).

Plaintiffs do not plead sufficient facts to meet this test. Rather, Plaintiffs' argument is that Dapper charges a fee on sales in the Marketplace. This fails. In the AC, Plaintiffs recognize the fee for what it was: "a 5% *transaction fee*." AC ¶ 66 (emphasis added). A transaction fee *fails* the strict vertical commonality test. If a Plaintiff buys a card on the Marketplace for $10, Dapper will receive $0.50. Should the collector later sell the card for $8, Dapper will receive $0.40 and the seller $7.60. The cardholder would be *down* $2.40, but Dapper will have *received* $0.90. There is no inextricable link such that profits or losses *necessarily* occur in kind.[1]

But that assumes this Court should even consider the test. The Second Circuit may well reject *any* appeal to the strict vertical test as a matter of law. While some district courts have applied the test, the Second Circuit has yet to embrace it. *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 88 (2d Cir. 1994) (rejecting broad vertical test and noting no ruling on strict); *see also Darrell v. Goodson,* 1980 WL 1392, at *3, n.8 (S.D.N.Y. Apr. 10, 1980) (refusing to apply vertical commonality). Other Circuits (who reject the test) have noted that "[t]he Second Circuit seems to be leaning toward a requirement of horizontal commonality," and against applying strict vertical commonality. *Wals v. Fox Hills Dev. Corp.*, 24 F.3d 1016, 1018 (7th Cir. 1994). This Court will likely not need to reach the issue. Plaintiffs' allegations are deficient regardless, but further briefing will explain why, even now, leave to amend should be denied.

**No Horizontal Commonality.** The parties also did not agree on whether Plaintiffs have sufficiently pleaded facts to meet the "horizontal commonality" test. The digital basketball cards Dapper sells as Moments are unique pieces of art. Plaintiffs do not dispute this. In fact, they allege it. AC ¶¶ 53, 54 (admitting the uniqueness of each Moment). But these allegations confirm how their claims fail as the cases analyzing art are plain: horizontal commonality "clearly does not exist." *Mechigian*, 612 F. Supp. at 1424-25. "[E]ach purchaser's success depends on the marketability and public acceptance of" the *particular* basketball highlight he or she purchases, "and not on the success of any other purchaser's artwork." *Dahl v. English*, 578

---

[1] Plaintiffs cite *SEC v. Telegram Grp., Inc.*, 448 F. Supp. 3d 352 (S.D.N.Y. 2020) in a footnote, but do not discuss the case's facts or compare it to their own allegations. And, that should be of no surprise. The *Telegram* facts are markedly different. There was no collectible basketball card or any form of collectible sold there. Rather, the *Telegram* defendants sold $1.7 billion worth of fundraising tokens to 175 high-worth investors. *Id.* at 361. The "Gram" Tokens were not goods (or even close); and the sales of those tokens were intended to fundraise, not to sell popular basketball cards to the consuming public. *See id.* at 367.

PAUL
HASTINGS

February 22, 2022
Page 3

F. Supp. 17, 20 (N.D. Ill. 1983). Thus, rather than showing commonality, each collector is "*in competition with* every other purchaser." *Id*. (emphasis added). Plaintiffs' letter fails to cite a single case to the contrary, and Dapper is aware of none.

Instead, Plaintiffs' letter argues that collectors' funds are "pooled" with Dapper. Plaintiffs' letter's assertion does not match Plaintiffs' Complaint. The words "pool," "pooled," or "pooling" make no appearance in the Complaint. To the contrary, if this Court were to look at Plaintiffs' purchase and sale transactions, it will see *individual* purchases and sales of distinct basketball cards of different players, made by each Plaintiff separately, at different prices, and each directed by each separate Plaintiff within their *un-pooled* unique accounts. Dkt. 22-2; 27-1.

Plaintiffs' letter's argument also does not match the *legal* definition. "Pooling" happens when multiple individuals invest money and their investment "constitutes a single unit of a larger investment enterprise." *Savino v. E. F. Hutton & Co.*, 507 F. Supp. 1225, 1236 (S.D.N.Y. 1981). In *Savino*, the court gave the example of a "'commodity pool,' in which investors' funds are placed in a single account and transactions are executed on behalf of the entire account rather than being attributed to any particular subsidiary account." *Id.* That is the *opposite* of what Plaintiffs' own purchase and sale records show. They directed *unique* purchases and *unique* sales of different individual player cards at different times. Dkt. 22-2; 27-1; *see also Revak*, 18 F.3d at 88 (*rejecting* claim to horizontal commonality when the "[p]laintiffs owned individual units, and could make profits or sustain losses independent of the fortunes of other purchasers").

Plaintiffs respond by citing to cryptocurrency cases, but they again fail to discuss the facts of those cases, and again those facts are markedly different. They were fundraising cases and did not involve trading cards or other collectibles. In *Rensel v. Centra Tech, Inc.*, the defendants conducted an Initial Coin Offering "in order to raise capital for further development of the Centra Debit Card and Centra Wallet." 2018 WL 4410126, at *1 (S.D. Fla. June 25, 2018).[2] In *Balestra v. ATBCOIN LLC*, the plaintiff sufficiently pleaded horizontal commonality because "the funds raised through the [Initial Coin Offering] were pooled together to facilitate the launch of the ATB Blockchain, the success of which, in turn, would increase the value of [the] [p]laintiff's ATB Coins" *proportionately*. 380 F. Supp. 3d 340, 353 (S.D.N.Y. 2019).

The facts alleged here are again very different. As Plaintiffs acknowledge, Dapper, the NBA, and the NBPA developed NBA Top Shot. AC ¶ 51. NBA Top Shot was developed before a single Moment was sold, for the obvious reason that collectors could not purchase Moments until NBA Top Shot existed. *What* was sold is also markedly different. Moments are not fundraising tokens. They are each unique basketball cards, each pieces of digital art, individually owned, *see* AC ¶¶ 53, 54, which simply fail the horizontal commonality test.

---

[2] Plaintiffs also fail to mention that the test applied in *Rensel* was not horizontal commonality but *broad vertical* commonality, *see Rensel*, 2018 WL 4410126 at *5 (citing *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1199 (11th Cir. 1999)), which, again the Second Circuit *rejects*. *Revak*, 18 F.3d at 88.



February 22, 2022
Page 4

**No Reasonable Expectation of Profits Based Solely on Dapper's Efforts.**  The parties also disagree on whether Plaintiffs have sufficiently pleaded that they had a reasonable expectation of profits based on Dapper's skill and managerial efforts under the applicable objective test.  There is no dispute (and no allegation to the contrary), however, that these digital goods, the Moments, were collected by a wide array of collectors for consumptive purposes.  This should be the end of it.  The Supreme Court has held that goods acquired for consumption, here collectibles, fail the *Howey* Test.  *See United Hous. Found.*, *Inc. v. Forman*, 421 U.S. 837, 852-53 (1975).

Plaintiffs also have failed to plead this element as they have failed to allege specific facts showing that Dapper promoted NBA Top Shot "'primarily as an investment.'"  *United States v. Leonard*, 529 F.3d 83, 88 (2d Cir. 2008) (quoting *SEC v. Aqua-Sonic Prods. Corp.*, 687 F.2d 577, 582 (2d Cir.), *cert. denied*, 459 U.S. 1086 (1982)).  The Complaint fails to cite to any marketing materials that sought to "attract investors by the prospect of profits resulting from the efforts of the promoters or third parties."  *Forman*, 421 U.S. at 854 (affirming district court's grant of motion to dismiss).  Instead, in their letter Plaintiffs cite a single tweet that quotes sales figures (with no discussion of gains or losses), *see* AC ¶ 65, and a quote from a single podcast noting the unsurprising fact that younger generations enjoy carrying their fandom collections in their pockets (*i.e.*, their smartphones), and that they enjoy having skin in the game by buying something that can be traded (like digital basketball cards).  *Id.* ¶ 80.  These allegations are insufficient.  "[P]assing reference[s] to buying the property as an investment" are not enough.  *Rice v. Branigar Org., Inc.*, 922 F.2d 788, 791 (11th Cir. 1991) (Powell, J.).  Even before *Twombly*, courts in this District have dismissed claims under this prong when a review of the marketing materials shows that "this development was [not] being promoted as a pure investment, as opposed to a residential development which may, incidentally, be also a good investment."  *Davis v. Rio Rancho Ests., Inc.*, 401 F. Supp. 1045, 1049-50 (S.D.N.Y. 1975) (granting motion to dismiss) (internal quotations marks omitted).[3]  There is no reasonable expectation of profits under *Howey* merely because a seller mentions that an item could increase in value.  *Revak*, 18 F.3d at 84 (no investment contract where condominiums were marketed for "the income to be derived from rentals, and the prospect of capital appreciation").  And, even if purchasers are led to expect profits, such expectations must be based on the entrepreneurial or managerial efforts of the promoter.  *Leonard*, 529 F.3d at 88 & n.6.

Cutting through all of that and dispositive, this prong of the *Howey* Test turns on control:  "It is the passive investor for whose benefit the securities laws were enacted; where there is a reasonable expectation of significant investor control, the protection of the 1933 and 1934 Acts

---

[3] Following *Davis*, courts have agreed that "the expectation of a profit on resale is insufficient to transform what is essentially a sale of real property into the sale of an investment contract."  *Woodward v. Terracor*, 574 F.2d 1023, 1026 (10th Cir. 1978) (quoting *Davis*).  And, it is a "tortured argument" for a plaintiff to claim "to the extent the developers managed the commercial facilities owned by them in the building successfully, the reputation of the building would be enhanced and the value of the residential units would appreciate" such that they meet this prong of the *Howey* Test.  *Johnson v. Nationwide Indus., Inc.*, 450 F. Supp. 948, 953 (N.D. Ill. 1978), *aff'd*, 715 F.2d 1233 (7th Cir. 1983); *see also Revak*, 18 F.3d at 89 (Second Circuit endorsing *Johnson* reasoning).  So too here.



February 22, 2022
Page 5

would be unnecessary." *Leonard*, 529 F.3d at 88 (citations omitted); *see also SEC v. W. J. Howey Co.*, 328 U.S. 293, 296 (1946) (service contract granted management "full discretion and authority" over the groves, including the fruit grown on each investor's plot, and the investors received an allocation of net profits based upon the quantities of fruit picked). Here, the card collectors buying Moments *actively controlled* what cards they owned and their profits to the extent they chose to sell their cards; they were not passive at all. Looking only to Plaintiffs' PSLRA Certifications, they collectively bought dozens of packs and bought and sold hundreds of cards; Mr. Austin even gifted a handful of Moments. Dkt. 22-2; 27-1. With this level of control, courts have had little difficulty dismissing cases under this prong at the pleading stage. *See, e.g.*, *Endico v. Fonte*, 485 F. Supp. 2d 411, 415 (S.D.N.Y. 2007) (granting motion to dismiss where "the interests Endico sold to the Fontes were not passive").

**Dapper Does Not, and Cannot, Create Profits.** Plaintiffs' argument that collectors' profits are due to Dapper's efforts is that investors can only realize profits in the Marketplace. But nowhere do Plaintiffs allege that Dapper controls Moment collectors' decisions to buy, hold or sell their Moments, nor does the Complaint allege that Dapper controls their profits or the bid or ask price on the Marketplace. As in *Noa v. Key Futures, Inc.*, "[t]he decision to buy or sell was made by the owner of the [Moments]" and "the profits to the [collector] depended upon the fluctuations of the [Moments] market, not the managerial efforts of [Dapper]." 638 F.2d 77, 79 (9th Cir. 1980).

Plaintiffs' allegation that investors can only trade on the Marketplace need not be accepted as true—not only because it is false, but because the documents Plaintiffs incorporate into their Complaint show it false. As the article Plaintiffs reference (AC ¶ 61) explains, "off-market" transactions are entirely possible. *See id.* (quoting https://www.si.com/nba/2021/03/17/nba-top-shot-crypto-daily-cover); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("[W]e may consider . . . documents incorporated into the complaint by reference."). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax*, 671 F.3d at 147. These attached materials are indeed rich with points that flatly contradict Plaintiffs' allegations—a point which Dapper would explain in greater detail in its motion.

**The Claim Against Mr. Gharegozlou Fails.** Mr. Gharegozlou joins in all of Dapper's arguments for why Plaintiffs have failed to plead that Moments are securities, and thus why there has been no violation of the Securities Act. The "control person" claim under Section 15 against Mr. Gharegozlou must therefore be dismissed because Plaintiffs failed to plead a "primary violation" of the securities laws. *Rombach v. Chang*, 335 F.3d 164, 177-78 (2d Cir. 2004).

The discussion above identifies in abbreviated form the areas where Plaintiffs and Dapper remain in disagreement. Dapper expects that both sides would appreciate the opportunity to explain their respective positions in greater detail and thus ask the Court to approve of the briefing schedule and pages to which they have already agreed.

PAUL
HASTINGS

February 22, 2022
Page 6

Respectfully submitted,

PAUL HASTINGS LLP

By:   /s/ *Kenneth P. Herzinger*
Kenneth P. Herzinger
Sean D. Unger (Pro Hac Vice)
Erin Zatlin (Pro Hac Vice)
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: 415-856-7000
kennethherzinger@paulhastings.com
seanunger@paulhastings.com
erinzatlin@paulhastings.com

Zachary Zwillinger
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
zacharyzwillinger@paulhastings.com

*Attorneys for Defendants Dapper Labs, Inc. and Roham Gharegozlou*

CC:    Phillip Kim, Esq. (By ECF)
        Michael Cohen, Esq. (By ECF)