

January 27, 2022

By ECF

Phillip Kim, Esq.
The Rosen Law Firm
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060

Re:   *Friel v. Dapper Labs, Inc., et al.*, No. 1:21-cv-05837-VM (S.D.N.Y.)

Mr. Kim:

This action should be dismissed because basketball cards (including digital ones) are not securities. Defendant Dapper Labs, Inc. ("Dapper") (in partnership with the NBA and NBAPA) developed the next generation of basketball cards—NBA Top Shot Moments ("Moments"), a unique, digital sports collectible that features video clips of plays, along with stats about players and games. Like any sports card, Moments can be bought in packs, or traded or sold among collectors. And like any sports card, they can be enjoyed on their own, assembled into sets, used for playing games, and shown off to friends. But Moments are better than cardboard sports cards, because they cannot be damaged or forged. They are built using the latest in cryptography technology, ensuring that Moments are safe, secure, and 100% authentic. Since June 2020, over 800,000 collectors have found a new avenue to NBA fandom with Moments.

Plaintiffs' claims are founded on the misconception that Moments are securities under federal law. Thus, in Plaintiffs' eyes, a five-second clip of a LeBron James dunk should be subject to the same registration and disclosure requirements as a share of Apple stock. But in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), the Supreme Court established what a plaintiff must show to plead that something is a security: "(i) an investment of money (ii) in a common enterprise (iii) with profits to be derived solely from the efforts of others." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 88 (2d Cir. 1994). And courts applying this "*Howey* Test" have consistently held that art, coins, and other collectibles like Moments are not securities. Because Moments fail the *Howey* Test, Dapper writes pursuant to Section II.B.1 of the Honorable Victor Marrero's Individual Practices to detail the deficiencies in the amended complaint (the "Complaint" or "AC").[1]

### I.   There Is No Common Enterprise Among Moment Collectors, or with Dapper

Plaintiffs have two ways to satisfy the "common enterprise" element of the *Howey* Test. Plaintiffs can attempt to plead "horizontal commonality," or that the "fortunes [of Moments

---

[1] Plaintiffs claim that Dapper has violated Sections 5 and 12(a)(1) of the Securities Act of 1933 because Moments are securities. AC ¶¶ 120-26. Plaintiffs also assert a claim against Roham Gharegozlou, Dapper's CEO, under Section 15 of the Securities Act, alleging that Mr. Gharegozlou is liable as a control person. *Id.* ¶¶ 127-31. As of the filing of this letter, Mr. Gharegozlou has not been served with the Complaint.



January 27, 2022
Page 2

collectors] [are tied] to the fortunes of [] other [collectors] by the pooling of assets, usually combined with the pro-rata distribution of profits." *Revak*, 18 F.3d at 87. Or Plaintiffs can attempt to plead "strict vertical commonality," *i.e.*, that the fortunes of Moments collectors are linked to Dapper's fortunes. *Id.* at 87-88; *see also In re J.P. Jeanneret Assocs.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011). Because the Complaint pleads neither, it should be dismissed.

**No Horizontal Commonality.** There is no horizontal commonality among Moments collectors because, as Plaintiffs admit, each Moment is "a unique digital asset." *See* AC ¶ 53. Indeed, Moments are a type of "crypto asset" known as an NFT, which stands for "<u>non-fungible</u> token." *Id*. ¶ 2 (emphasis added); *see also id*. ¶ 54 ("NFTs are, by nature, <u>unique</u>.") (emphasis added). Even Moments "minted" from the same basketball play are different, in that they each have a unique serial number that makes a given Moment more or less attractive to a collector based on their own preferences. As one of the articles cited by the Complaint explains, "low serial numbers are more valuable." This article also quotes a collector who wanted to collect serial number 23 for a play because it was Michael Jordan's number.

It is the unique nature of each Moment that destroys horizontal commonality. The same is true for works of art. *See, e.g.*, *Dahl v. English*, 578 F. Supp. 17, 20 (N.D. Ill. 1983).

Moreover, beyond the uniqueness of each Moment, the value of each Moment is independent of every other Moment, so much so that—in the winner-take-all world of the NBA—the value of Moments from different players or teams (or even different players on *the same team*) can move in opposite directions. Thus, a Knicks win over the Nets may be good for Knicks Moments and bad for Nets Moments, and depending on a player's performance, that same game may increase demand for certain Knicks players' Moments (like RJ Barrett) and decrease demand for other Knicks players' Moments (like Julius Randle).

While courts look to whether there has been a "pooling of assets" as an indication of horizontal commonality, the Complaint fails to even allege that such a pooling has ever occurred. Nor have Plaintiffs pled that there is a "pro-rata distribution of profits" among collectors. For securities, profits are distributed based on a pro-rata share of what has been invested (*e.g.*, stock dividends). In contrast, Moments collectors are not entitled to anything from Dapper or any other entity.

**No Vertical Commonality.** Likewise, there is no vertical commonality because there is no link between the fortunes of each Moments collector and Dapper. Like any other corporation, Dapper has its own shareholders, who have a say in Dapper's corporate governance and are entitled to a portion of Dapper's profits. In contrast, a collector of Moments cannot vote in Dapper corporate matters or receive any of Dapper's profits.

Moreover, vertical commonality requires a strict "<u>one-to-one relationship</u> between the investor and investment manager such that there is an interdependence of both profits and losses of the investment." *Marini v. Adamo*, 812 F. Supp. 2d 243, 256 (E.D.N.Y. 2011) (emphasis added)



January 27, 2022
Page 3

(citations and internal quotation marks omitted).  In contrast, it is entirely possible for Dapper as a company to make money by selling Moments, while a collector loses money when they buy and sell their individual Moments.  The reverse is true as well; Dapper could fail as a business, while a collector could earn a profit on a limited edition LeBron James Moment.

The total control that collectors have over their Moments is the same as the control coin collectors have over their coins, which courts have also held fail the *Howey* Test.  *See Marini*, 812 F. Supp. 2d at 257-58.  The joy in collecting comes from the personal control, the individualized pursuit, and the connection to the players and the teams, not the sale of the card.

## II.  Dapper Did Not Lead Collectors to Expect Profits Based on Dapper's Efforts

The Complaint also wholly fails to plead that Moments come with "a reasonable expectation of profits," or that such profits were "to be derived from the entrepreneurial or managerial efforts of others."  *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975).

**No Reasonable Expectation of Profits.**  Collectors could not have had a reasonable expectation of profits, because NBA Top Shot consistently marketed Moments as collectibles.  NBA Top Shot requires that collectors use Moments "primarily as objects of play and not for investment or speculative purposes."  AC ¶ 79.  Indeed, nowhere in the Complaint do Plaintiffs allege that NBA Top Shot ever even mentioned profits in its marketing materials or website.  Instead, the Complaint cites to a handful of tweets and out-of-context quotations from podcast interviews.  *Id*. ¶¶ 63, 65, 80, 103.  But these allegations are insufficient on their face, and the Supreme Court has held that consumables like Moments (*e.g.*, which can be watched, read, put together in sets, used in games, and displayed to the world) are not securities.  *See Forman*, 421 U.S. at 858.

**Collectors, Culture, and Game Results Influence Collector Gains, Not Dapper.**  Even if Collectors do profit from the sale of their Moments, those profits are the result of market and other forces over which Dapper has no control.  *See Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980) (no investment contract where profits "depended upon the fluctuations of the silver market, not the managerial efforts of [the defendant]").  Those forces include overall interest in the NBA and the success of a given team or player.  While Dapper initially chooses the Moments to mint, that is true for every basketball card and collectible available for purchase.

Finally, Plaintiffs' allegations about FLOW tokens are irrelevant.  Flow is the blockchain that Dapper developed, and on which Moments now reside.  Plaintiffs' claims are about Moments, not FLOW tokens.  There is no necessary connection between FLOW tokens and Moments.

## III.  Conclusion

Because Moments fail the *Howey* Test, Plaintiffs' claims are all subject to dismissal.  If Plaintiffs elect not to amend the Complaint, Dapper requests that its deadline for the motion to dismiss be set for 45 days after the conference to be scheduled under Judge Marrero's Individual Rules.

**PAUL HASTINGS**

January 27, 2022
Page 4

Respectfully submitted,

PAUL HASTINGS LLP

By:   /s/ *Kenneth P. Herzinger*
Kenneth P. Herzinger
Sean D. Unger (Pro Hac Vice)
Abigail Wald (Pro Hac Vice)
Erin Zatlin (Pro Hac Vice)
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: 415-856-7000
kennethherzinger@paulhastings.com
seanunger@paulhastings.com
abigailwald@paulhastings.com
erinzatlin@paulhastings.com

Zachary Zwillinger
200 Park Avenue
New York, NY 10166
Telephone: 1(212) 318-6000
zacharyzwillinger@paulhastings.com

*Attorneys for Defendant Dapper Labs, Inc.*

CC: Honorable Victor Marrero (By ECF)