UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEEUN FRIEL, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br> -against-<br><br>DAPPER LABS, INC. and ROHAM GHAREGOZLOU,<br><br>      Defendants. | Case No. 1:21-cv-05837-VM<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. BASKETBALL CARDS ARE NOT SECURITIES ........................................................... 1

    A. Plaintiffs Fail To Plead Facts Showing a Common Enterprise............................. 1

        1. Plaintiffs Fail To Plead Facts Showing Horizontal Commonality............. 1

        2. The Second Circuit Hasn't Endorsed the Strict Vertical Test, and Regardless, Plaintiffs Haven't Alleged It. ................................................. 7

    B. Dapper Didn't Lead Collectors To Expect Profits.................................................. 8

        1. Plaintiffs' Allegations Are Legally Insufficient. ........................................ 8

    C. Plaintiffs' Allegations Fail Howey's Essential Efforts Test ................................ 10

        1. Plaintiffs' Fail To Allege that Dapper Made Any Promises to Perform. .................................................................................................... 10

        2. Plaintiffs Fail To Allege Managerial Efforts. .......................................... 11

        3. The Marketplace Doesn't Demonstrate Dapper's Managerial Efforts. .................................................................................................... 11

        4. Purchasers' Contractual and Retained Control of Moments Is Dispositive. ............................................................................................. 12

III. CONCLUSION .................................................................................................................. 12

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Alcon S'holder Litig.*,
　719 F. Supp. 2d 280 (S.D.N.Y. 2010)......................................................................................12

*Audet v. Fraser*,
　2022 WL 1912866 (D. Conn. June 3, 2022).............................................................................3

*Austin v. Bradley, Barry & Tarlow*,
　1992 WL 560915 (D. Mass. June 17, 1992)..............................................................................8

*Balestra v. ATBCOIN LLC*,
　380 F. Supp. 3d 340 (S.D.N.Y. 2019)........................................................................3, 4, 5, 10

*Christensen v. Harris County*,
　529 U.S. 576 (2000)...................................................................................................................9

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs.*,
　450 F. Supp. 3d 379 (S.D.N.Y. 2020).......................................................................................5

*Dahl v. English*,
　578 F. Supp. 17 (N.D. Ill. 1983) ............................................................................................6, 7

*Gary Plastic Packaging Corp. v. Merrill Lynch*,
　756 F.2d 230 (2d Cir. 1985)....................................................................................................11

*Graham v. Select Portfolio Servicing, Inc.*,
　156 F. Supp. 3d 491 (S.D.N.Y. 2016)...................................................................................6, 7

*Gugick v. Melville Cap., LLC*,
　2014 WL 349526 (S.D.N.Y. Jan. 31, 2014) ..........................................................................7, 8

*Hirk v. Agri-Rsch. Council, Inc.*,
　561 F.2d 96 (7th Cir. 1977) ......................................................................................................2

*In re David B. Havanich*,
　S.E.C. Release No. 936, 2016 WL 25747 (ALJ Jan. 4, 2016)..................................................4

*In re J.P. Jeanneret Assocs., Inc.*,
　769 F. Supp. 2d 340 (S.D.N.Y. 2011).......................................................................................8

*In re UBS AG Sec. Litig.*,
　2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.* 752 F.3d 173
　(2d Cir. 2014)............................................................................................................................2

*Jordan (Berm.) Inv. Co., Ltd. v. Hunter Green Inves. Ltd.*,
  205 F. Supp.2d 243 (S.D.N.Y. 2002) ................................................................................ 8

*Kaplan v. Shapiro*,
  655 F. Supp. 336 (S.D.N.Y. 1987) ................................................................................ 7, 8

*Landreth Timber Co. v. Landreth*,
  471 U.S. 681 (1985) ......................................................................................................... 10

*Long v. Shultz Cattle*,
  881 F.2d 129 (5th Cir. 1989) .............................................................................................. 8

*Lowenbraun v. L.F. Rothschild*,
  685 F. Supp. 336 (S.D.N.Y. 1988) .................................................................................... 8

*Marine Bank v. Weaver*,
  455 U.S. 551 (1982) ........................................................................................................... 1

*Marini v. Adamo*,
  812 F. Supp. 2d 243 (E.D.N.Y. 2011) ........................................................................... 6, 8

*Mechigian v. Art Cap. Corp.*,
  612 F. Supp. 1421 (S.D.N.Y. 1985) .................................................................................. 7

*Milnarik v. M-S Commodities, Inc.*,
  457 F.2d 274 (7th Cir. 1972) .............................................................................................. 2

*Noa v. Key Futures, Inc.*,
  638 F.2d 77 (9th Cir. 1980) ........................................................................................ 11, 12

*Rensel v. Centra Tech, Inc.*,
  2018 WL 4410126 (S.D. Fla. June 25, 2018) .................................................................. 5

*Revak v. SEC Realty Corp.*,
  18 F.3d 81 (2d Cir. 1994) ......................................................................................... *passim*

*Savino v. E.F. Hutton & Co.*,
  507 F. Supp. 1225 (S.D.N.Y. 1981) ............................................................................. 2, 3

*SEC v. Aqua-Sonic Prods. Corp.*,
  524 F. Supp. 866 (S.D.N.Y. 1981), *aff'd*, 687 F.2d 577 (2d Cir. 1982) ...................... 9

*SEC v. Feng*,
  935 F.3d 721 (9th Cir. 2019) .............................................................................................. 9

*SEC v. Kik Interactive Inc.*,
  492 F. Supp. 3d 169 (S.D.N.Y. 2020) ................................................................. 3, 4, 5, 10

*SEC v. LBRY, Inc.*,
    2022 WL 16744741 (D.N.H. Nov. 7, 2022) ............................................................................4

*SEC v. Life Partners, Inc.*,
    87 F.3d 536 (D.C. Cir. 1996) ..........................................................................................11, 12

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) .......................................................................3, 4, 5, 10

*SEC v. W. J. Howey Co.*,
    328 U.S. 293 (1946) ...........................................................................................................1, 9, 11

*Stenger v. R.H. Love Galleries, Inc.*,
    741 F.2d 144 (7th Cir. 1984) ......................................................................................................6

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975) ..................................................................................................................10

*United States v. Leonard*,
    529 F.3d 83 (2d Cir. 2008) ........................................................................................................12

*Wals v. Fox Hills Dev. Corp.*,
    24 F.3d 1016 (7th Cir. 1994) ......................................................................................................7

*SEC v. LBRY, Inc.*,
    2022 WL 16744741 (D.N.H. Nov. 7, 2022) ............................................................................4

*SEC v. Life Partners, Inc.*,
    87 F.3d 536 (D.C. Cir. 1996) ..........................................................................................11, 12

*SEC v. Telegram Grp. Inc.*,
    448 F. Supp. 3d 352 (S.D.N.Y. 2020) .......................................................................3, 4, 5, 10

*SEC v. W. J. Howey Co.*,
    328 U.S. 293 (1946) ...........................................................................................................1, 9, 11

*Stenger v. R.H. Love Galleries, Inc.*,
    741 F.2d 144 (7th Cir. 1984) ......................................................................................................6

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975) ..................................................................................................................10

*United States v. Leonard*,
    529 F.3d 83 (2d Cir. 2008) ........................................................................................................12

*Wals v. Fox Hills Dev. Corp.*,
    24 F.3d 1016 (7th Cir. 1994) ......................................................................................................7

I.  **INTRODUCTION**

A cardboard basketball card isn't a security.  A digital basketball card isn't one either.  Common sense says so.  The law says so.  Dapper's Opening Brief proved all of this.

But, Dapper's Opening Brief also came with a warning.  Dapper warned the Court that Plaintiffs' response would be to seek to sow confusion.  And so they sought.  Plaintiffs' Opposition Brief seeks to blur the controlling tests, ignores their own dispositive allegations, and fails to address law that bars their claims.  Plaintiffs, for example, spend pages discussing FLOW tokens, when their Complaint and their PSLRA certifications make clear that this case is about whether basketball cards (Moments) are securities, not FLOW tokens.  Dust and distraction cannot be rewarded.  Plaintiffs have failed to plead what *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946) and its progeny require.  Below, Dapper addresses the controlling standards, matching arguments across the briefs when possible.

At bottom, the Court should not be blind to common sense.  Dapper sells basketball cards.  A basketball card is "not the type of instrument that comes to mind when the term 'security' is used and does not fall within 'the ordinary concept of a security.'" *Marine Bank v. Weaver*, 455 U.S. 551, 559 (1982).  Because Plaintiffs have failed to plead sufficient facts to meet the *Howey* test, this Court should dismiss Plaintiffs' claims.

II. **BASKETBALL CARDS ARE NOT SECURITIES**

    A.    <u>Plaintiffs Fail To Plead Facts Showing a Common Enterprise</u>

        1.    *Plaintiffs Fail To Plead Facts Showing Horizontal Commonality.*

There is no dispute that the Second Circuit itself has endorsed but one test for *Howey's* common enterprise prong:  horizontal commonality.  Plaintiffs fail to plead it.  Instead, Plaintiffs response to Dapper's arguments regarding horizontal commonality is marked by **concession** (e.g., noting separate accounts, *Compare* MTD 9–11 *with* Opp. 18–19), **avoidance** (e.g., ignoring cases

1

holding art isn't a security, *Compare* MTD 11–12 *with* Opp. 19–20), and ***false comparisons*** (e.g., relying on inapposite cryptocurrency cases, *Compare* MTD 12–14 *with* Opp. 14–18, and trying to make this case about FLOW tokens, instead of the Moments Plaintiffs bought).

        a.        Plaintiffs Fail To Plead Pooling.

Without pooling, Plaintiffs' horizontal commonality arguments fail as a matter of law. *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) ("horizontal commonality ***requires*** a sharing or ***pooling*** of funds" and is defined as "***the tying of each individual investor's fortunes to the fortunes of the other investors*** by ***the pooling of assets***[.]") (emphasis added; citations omitted). Courts from around the Country recognize there is no pooling unless accounts trade "in a uniform manner," *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274, 278 (7th Cir. 1972); and there is no pooling if each "account has a success or failure rate without regard to the others[.]" *Hirk v. Agri-Rsch. Council, Inc.*, 561 F.2d 96, 101 (7th Cir. 1977). Plaintiffs didn't allege a pooling of funds and don't dispute their failure to do so—thus conceding the point. *See, e.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012) (plaintiff concedes an issue through silence in its opposition brief), *aff'd sub nom.* 752 F.3d 173 (2d Cir. 2014). That should be the end of it.

But Plaintiffs press on and do what Dapper suggested they would. In its Opening Brief, Dapper predicted that Plaintiffs would apply a "crypto" label to the basketball cards they bought in the hope that the label would make up for the fact that they did not allege pooling. MTD 12–13, 28. And so they did. Opp. 13–15. But this shouldn't and won't work.

Let's start from basics. *Revak* controls, and it requires pooling of investor funds in a passive, connected enterprise such that investors' fortunes are tied together. 18 F.3d at 88. Even the pre-*Revak* authority Plaintiffs cite, *Savino v. E.F. Hutton & Co.*, 507 F. Supp. 1225 (S.D.N.Y. 1981), Opp. at 18, recognizes that for horizontal commonality to be sufficiently pleaded "[e]ach

2

investor's rate of return" needs to be "*entirely* a function of the rate of return shown by the entire account[.]" 507 F. Supp. at 1236 (emphasis added). So passive dollar investments need to be "pooled" under *Revak* and a would-be investor's return needs to be "*entirely*" a function of the performance of the whole. Plaintiffs can't and don't allege that here—rather conceding collectors held their cards in separate accounts and competed for coveted player cards. *See* Dkt. 22-2, 27-1.

What Plaintiffs try to say in response is that 'we are like those non-basketball card cases where companies sold generic tokens to raise funds for a *later*-built ecosystem (also described as initial coin offerings or ICO's). But of course, they aren't and that isn't what Plaintiffs allege. To the contrary, Plaintiffs **concede** that NBA Top Shot and the digital cards they collect existed *before* they made their purchases. Opp. 16. This was a formed consumer good, sold to consumers, that were collected and consumed like with any other card collections. *See* Dkt. 22-2, 27-1. Just like Dapper said, Plaintiffs are trying to have this Court say an oyster is the same thing as an apple, when Courts already recognize they shouldn't. *Audet v. Fraser*, 2022 WL 1912866, at *14 (D. Conn. June 3, 2022) (declining to follow *ATBCOIN, Telegram*, and *Kik* because "Hashlets. . . are distinguishable from the cryptocurrency products" in those cases).

Plaintiffs press on, trying to focus on language in *Revak* quoted in cryptocurrency cases regarding the "success of the overall venture," Opp. at 13–19. But Plaintiffs ignore *Revak*'s holdings that "horizontal commonality **requires** a sharing or pooling of funds[.]" 18 F.3d at 87 (emphasis added). Plaintiffs don't and can't allege that card buyers pooled their funds. And without that pooling, there is no horizontal commonality.

To be clear, this Court needn't disagree with *ATBCOIN*, *Telegram*, and *Kik* (the cases Plaintiffs invoke) to find that Plaintiffs have failed their pleading burden on horizontal commonality. Opp. at 13–17. Those cases involved capital raises, *Balestra v. ATBCOIN LLC*,

3

380 F. Supp. 3d 340, 347 (S.D.N.Y. 2019), *SEC v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 375 (S.D.N.Y. 2020), *SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 175 (S.D.N.Y. 2020),[1] with identical tokens that acted like shares. *See, e.g.*, *Kik*, 492 F. Supp. 3d at 182 ("fungible Kin . . . were equal in value" and "identical assets"). Thus, in those cases, pooling could *potentially* be pleaded because there *was* pooling; the whole point of the token sales was to raise money to build something else, which the token holder held a passive stake in. *See, e.g.*, *ATBCOIN*, 380 F. Supp. 3d at 347; *Telegram*, 448 F. Supp. 3d at 361–62; *Kik*, 492 F. Supp. 3d at 175–76.

Here, there is none of that. A collecting consumer bought basketball cards for a collection, not a share in Dapper. Without pooling like in the ICO cases, Plaintiffs' argument is, in effect—'well, the sales of cards would give Dapper money to try more things, and those efforts might help us.' But without pooling, the argument is not a horizontal commonality claim. It is at best a broad vertical commonality argument (though a dubious one), and the Second Circuit rejects broad vertical commonality "where the fortunes of the investors need be linked only to the *efforts* of the promoter." *Revak*, 18 F.3d at 87–88 (citation omitted).

But if the Court were so inclined, it could and should disagree with at least one aspect of *ATBCOIN*, *Telegram*, and *Kik*. Plaintiffs invoke the cases in an effort to explain away their failure to allege a *pro rata* distribution of profits, *see* Opp. 13, 14–15, 17, 19 n.8, which again the Second Circuit holds *presumptively* must be pleaded. *Revak*, 18 F.3d at 87. These Courts got their analysis on this point wrong. *ATBCOIN* held *pro rata* distributions of profits was unnecessary, relying on the SEC's *Munchee* settlement. This was error. As a matter of law, non-litigated settled SEC orders have **no** precedential value. *See, e.g.*, *In re David B. Havanich*, S.E.C. Release No. 936, 2016 WL 25747, at *2, n.7 (ALJ Jan. 4, 2016) ("The Commission has

---

[1] The same is true of *SEC v. LBRY, Inc.*, 2022 WL 16744741, at *1 (D.N.H. Nov. 7, 2022).

4

stressed many times that settlements are not precedent.") (collecting cases).² Further still, *ATBCOIN* relied only on one *out-of-circuit* case on the common enterprise point, *Rensel v. Centra Tech, Inc.*, 2018 WL 4410126, at *5 (S.D. Fla. June 25, 2018), that was decided on the basis of the Eleventh Circuit's **broad** vertical commonality test, which, **again** the Second Circuit rejects.³ *Kik* and *Telegram* just built on that error. Both cases rely exclusively on *ATBCOIN* as the sole basis for the proposition that *pro rata* distributions are not required. *See Kik*, 492 F. Supp. 3d at 178; *Telegram*, 448 F. Supp. 3d at 369 n.8.

With the aid of this analysis, this Court can avoid *Telegram's* and *Kik's* analytical error in following *ATBCOIN*. When it does, it will see that Plaintiffs' failure to allege a *pro rata* distribution of profits is but another way they have failed to meet their pleading burden.

But, while Dapper is right, the Court need not engage on the *pro rata* profits issue to dismiss. Rather, it is dispositive that none of the ICO cases Plaintiffs invoke involved unique assets like the basketball cards here. Units of particular generic crypto increase or decrease in proportional value; *ATBCOIN*, 380 F. Supp. 3d at 347; *Kik*, 492 F. Supp. 3d at 182; as they are "identical[.]" *Telegram*, 448 F. Supp. 3d at 369, *Kik*, 492 F. Supp. 3d at 182. Unique basketball cards don't do that.

Rather, Plaintiffs' own PLSRA certifications show that card prices for individual players (the Chris Paul's, the Deandre Ayton's or the Devin Booker's, *see* Dkt. 22-2, 27-1) did not move as a block. Instead, one collector's gain may be another collector's loss (true at any card-shop

---

² *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs.*, 450 F. Supp. 3d 379, 426, n.3 (S.D.N.Y. 2020) (declining to consider SEC administrative orders made pursuant to settlement offer because they are not legal precedent). *ATBCOIN* relied on the settlement, because both parties discussed it extensively. *ATBCOIN*, 380 F. Supp. 3d at 354, n. 12. Here, Dapper knows the law and knows any reliance on a SEC settlement is legally erroneous.

³ *See* MTD at 14 for Dapper's discussion of *Rensel*. Plaintiffs invoked *Rensel* in their pre-motion letter. Dkt. 31 at 2. In their Opposition, Plaintiffs do not respond to Dapper's discussion of *Rensel*, yet they *still* cite *ATBCOIN* describing it as relying on "recent cases" but purposefully **omit** its reference to *Rensel*. *See* Opp. 14-15 (citing *ATBCOIN*, 380 F. Supp. 3d at 354, but stating "citation omitted"). This *sub silentio* abandonment of *Rensel* should confirm for the Court that Plaintiffs' invocation of *ATBCOIN*, which is fully dependent on *Rensel*, is dubious.

5

trade night). Because the "[P]laintiffs owned individual [cards], and could make profits or sustain losses independent of the fortunes of other purchasers . . . . [t]here [is] simply no indicia of horizontal commonality." *Revak*, 18 F.3d at 88. Plaintiffs, in short, have not alleged in their complaint the facts that the Second Circuit says must be pleaded to allege horizontal commonality: Pooling. *Id.* at 87–88. That ends it.

b. Sales of Unique Collectibles Are Not Securities Transactions.

Plaintiffs' overreach aside, the law is clear: Courts have consistently refused to treat the sales of artwork and unique collectibles as investment contracts. MTD at 12. Plaintiffs, in fact, concede that Moment collectors could have differing outcomes (one gains, another loses) when they sell their unique cards. Opp. at 19. This concession should end their case.

But Plaintiffs argue on, citing to inapposite authority. Opp. 19–20. In *Marini v. Adamo*, the Court held that "horizontal commonality d[id] not exist[.]" 812 F. Supp. 2d 243, 255 (E.D.N.Y. 2011).[4] It was lacking in *Stenger*, too: "[E]ven if [the Court] assume[d] that defendants sold paintings to other investors, there is no basis for assuming that the appreciation or depreciation of plaintiff's collection would benefit anyone other than himself." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 147 (7th Cir. 1984). So no help to Plaintiffs there.

More telling than the cases Plaintiffs cite are the cases they ignore. *See Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 514 (S.D.N.Y. 2016) (claims abandoned where an "opposition . . . did not deal with the authorities cited by the defendants nor did it challenge the defendants' arguments") (citations omitted). Plaintiffs outright refused to address *Dahl v. English* and its clear holding that horizontal commonality does not exist for "the sale of unique pieces of artwork to individual purchasers at different prices through different contracts executed at different

---

[4] Plaintiffs' bald arguments regarding "bespoke over-the-counter-option[s]," Opp. at 20, are unsupported. Plaintiffs offer no argument for why basketball cards shouldn't be treated like the artwork they mostly closely resemble.

6

times," and the resulting "competition" between buyers.  578 F. Supp. 17, 20 (N.D. Ill. 1983).  But *Dahl's* analysis is solid and directly relevant—the sale of "unique" basketball cards, AC ¶ 54, at different prices and different times, is at the core of Plaintiffs' claim.  Nor do Plaintiffs address several other artwork cases holding the same.  *See, e.g.*, *Mechigian v. Art Cap. Corp.*, 612 F. Supp. 1421, 1428 (S.D.N.Y. 1985) (rejecting argument that sale of artwork, a lithographic plate, was a security transaction; "horizontal commonality clearly does not exist") (citations omitted).

        2.    *The Second Circuit Hasn't Endorsed the Strict Vertical Test, and Regardless, Plaintiffs Haven't Alleged It.*

Failing to allege horizontal commonality, Plaintiffs also try to invoke strict vertical commonality, without addressing (at all) Dapper's argument that the Second Circuit should reject the test like many other Circuits do.  MTD at 15–16; *Wals v. Fox Hills Dev. Corp.,* 24 F.3d 1016, 1018 (7th Cir. 1994) (noting that "[t]he Second Circuit seems to be leaning toward a requirement of horizontal commonality"); *see also Graham,* 156 F. Supp. 3d at 514.

But even if strict vertical commonality were sufficient, Plaintiffs haven't alleged it.  For strict vertical commonality to exist, collectors and Dapper must *always* make money or lose money in kind.  *Gugick v. Melville Cap., LLC*, 2014 WL 349526, at *4 (S.D.N.Y. Jan. 31, 2014) (noting required link); *Kaplan v. Shapiro*, 655 F. Supp. 336, 341 (S.D.N.Y. 1987) (strict vertical "must involve an interdependence of *both profits and losses*" and is lacking where there is "no interdependence of losses") (citation omitted).  Plaintiffs don't allege that.  Rather, Plaintiffs' entire vertical commonality claim is based on the fixed "5% transaction fee" Dapper charges for *every* transaction in the secondary marketplace.  Opp. at 11; AC ¶ 66.  This doesn't work.

Dapper showed in its Opening Brief how it can make $.90 when a collector *loses* $2.40 on a given card.  MTD at 15–18.  Plaintiffs respond with silence, but that silent acceptance defeats their claim.  Simply put, collectors' fortunes and Dapper's fortunes don't necessarily "rise and fall

7

together." *Jordan (Berm.) Inv. Co., Ltd. v. Hunter Green Inves. Ltd.*, 205 F. Supp.2d 243, 249 (S.D.N.Y. 2002) (citation omitted). And without that connection, strict vertical commonality doesn't exist. *See, e.g.*, *Gugick,* 2014 WL 349526, at *4–5; *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011) (citing *Jordan*, 205 F. Supp. 2d at 249).[5]

Plaintiffs' invocation of *Marini* does not change the analysis. *Marini* didn't hold that a plaintiff can satisfy the strict vertical test when a plaintiff can lose money when a defendant gains. Rather, the issue before the Court was factual: whether the defendant received a commission **at all**. 812 F. Supp. 2d at 261. To accept Plaintiffs' implied suggestion that *Marini* somehow *changed* the test would not only put it at odds with cases like *Gugick, Kaplan,* and *Jordan*, but also with itself. *Marini* credited *Lowenbraun v. L.F. Rothschild*, 685 F. Supp. 336, 341 (S.D.N.Y. 1988) as an accurate statement of the strict vertical test when it found vertical commonality *lacking* because "'profits and losses were not interdependent since the broker allegedly profited from the commissions while plaintiffs suffered losses[.]'" *Marini*, 812 F. Supp. 2d at 256 (quoting *Lowenbraun*). Dapper, of course, made this very point in its moving papers. MTD at 18. Plaintiff's response? Silence. Deafening silence.

B.  Dapper Didn't Lead Collectors To Expect Profits

1.  *Plaintiffs' Allegations Are Legally Insufficient.*

What facts have Plaintiffs alleged to create an objective expectation of profit? It's not

---

[5] In *In re J.P. Jeanneret*, it was JPJA's 20% **performance fee**, which would be paid only if "the profits in the investment account exceed[ed] the preferred return" which made JPJA's "compensation [] dependent on the **successful performance** of the investment" and not the fixed quarterly fee charged (like Dapper's fixed transaction fee), that created strict vertical commonality. 769 F. Supp. 2d at 360 (emphasis added). Plaintiffs didn't allege that Dapper charges a *performance fee* (it doesn't). Thus, the arrangement here is **not** functionally the same as the arrangement in *Jeanneret*. Opp. at 11. Rather, "[b]ecause [Dapper] was entitled to a [transaction fee] . . . regardless of whether Plaintiff made a profit from the sale[,]" strict vertical is lacking. *Gugick*, 2014 WL 349526, at *5. Tellingly, Plaintiffs fail to address *Austin v. Bradley, Barry & Tarlow*, 1992 WL 560915, at *6 (D. Mass. June 17, 1992) and *Long v. Shultz Cattle*, 881 F.2d 129, 140–41 (5th Cir. 1989), cited in Dapper's Opening (MTD at 17–18, n.21), which confirms that Plaintiffs are appealing to *broad* vertical commonality, which the Second Circuit rejects. *Revak*, 18 F.3d at 87–88 (rejecting *Long* and broad vertical commonality).

8

Dapper's Terms of Use, which specify that Moment purchasers "own the underlying NFT completely," define the cards as "Art," and make no promises about future profits. *See* Dkt. 36-10. No purchaser could reasonably expect profits to come from the efforts of someone who has undertaken no obligations to expend any efforts on their behalf. *See, e.g.*, *Howey*, 328 U.S. at 296 (representing to investors an expected 20% or more in profits).

Plaintiffs point to only *five* Dapper tweets and cherry-picked excerpts from one interview. Opp. at 22–23 (citing AC ¶¶ 63, 65, 80). Plaintiffs then assume, without citation to an allegation in the Amended Complaint or any legal authority, that purchasers of cards would understand these comments to reflect a "persistent" objective promise of profits. In reality, the tweets highlight the popularity of the cards. Plaintiffs point to no case, and Dapper is aware of none, holding product popularity is a factor under *Howey*. Popularity *does not* make a product a security.

Without sufficient allegations, Plaintiffs seek to muddy the waters by suggesting that the subjective intent of purchasers is "highly probative." They're wrong. The Second Circuit has affirmed a case confirming that "[t]he subjective intentions or motivations of the investors are irrelevant." *SEC v. Aqua-Sonic Prods. Corp.*, 524 F. Supp. 866, 876 (S.D.N.Y. 1981) (citation omitted), *aff'd*, 687 F.2d 577 (2d Cir. 1982). The SEC Framework on which Plaintiffs rely, *see* Opp. at 21, doesn't change the objective inquiry, because it is *not* legal authority. *See, e.g.*, *Christensen v. Harris County*, 529 U.S. 576, 586–88 (2000) (holding agency policy statements and guidelines lack the force of law and do not warrant *Chevron*-style deference).

Plaintiffs' suggestion that an expectation of profits can be secondary to other motives, Opp. at 21; and their analogies to investors buying Tesla and Coca-Cola stock because they love Elon Musk or soda miss the mark. Opp. at 22.[6] If anything, digital basketball cards are comparable to

---

[6] Plaintiffs rely on *SEC v. Feng*, 935 F.3d 721 (9th Cir. 2019), but there the "investor's interest in a visa is inextricably tied to the financial success of the [investment] project;" if the investment is not successful, no visa is granted. *Id.* at

9

a Tesla car or a bottle of soda, not company stock.  Individuals purchase Moments, Teslas, and Cokes for consumptive use and enjoyment.  And no-one would call a Coke a security.

Rather, "[w]hen a purchaser is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply." *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852–53 (1975); MTD at 5, 7.  Plaintiffs' can't deny that collectors purchase Moments with a desire to consume them for what they are: unique cards depicting specific NBA games, plays, and players.  After all, Plaintiffs' own PSLRA certifications demonstrate affinities for hometown teams and players (over 45% of the individual Moments purchased by Plaintiff Leuis, who lives in New York, are for players who were on the New York Knicks at the time of the play the Moment features).[7]

### C.   Plaintiffs' Allegations Fail *Howey's* Essential Efforts Test

Dapper's Opening Brief explained how Plaintiffs failed to plead sufficient facts to meet *Howey's* "efforts of others" prong.  MTD at 21–27.  Plaintiffs' attempts to argue around their pleading deficiencies don't change the conclusion:  They haven't pleaded the facts to meet this prong.

#### 1.   *Plaintiffs' Fail To Allege that Dapper Made Any Promises to Perform.*

Plaintiffs have not alleged that Dapper made any promises to perform any efforts to increase the value of Plaintiffs' collectibles.  MTD at 24–25.  This fact is fatal to Plaintiffs' "efforts of others" allegations, which Plaintiffs fail to rebut in their Opposition.

Instead, Plaintiffs again rely on inapposite ICO cases.  But there, the promoters *explicitly* made promises of future efforts.  *See ATBCOIN*, 380 F. Supp. 3d at 347; *Telegram*, 448 F. Supp. 3d at 372; *Kik*, 492 F. Supp. 3d at 174, 179–80.  There is none of that here.  Yet, it is those very

---

[731]. Such an inextricable link is missing here.

[7] *See* Dkt. 22-2, 27-1.  Contrary to Plaintiffs' suggestion, Opp. at 18–19, 23–24, *Forman*'s "consumptive use" test has been applied outside the real estate context.  *See, e.g.*, *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 690 (1985) (applying *Forman* to lumber business case but finding consumptive use not met based on facts alleged).

promises that distinguish the sale of mere oranges from the sale of an investment contract. Proving the point, the investment contract in *Howey* involved not just the sale of real estate parcels in an orange grove, but the promise that someone else would grow the oranges, pick, market, and sell them for profit. *Howey*, 328 U.S. at 295–96. The investors were buying a passive investment. *Id.* at 296. Here, as Plaintiffs show, collectors covet certain cards, express their fandom through their collections, and actively collect just as with any other sports card collections. Dkt. 22-2, 27-1.

### 2. *Plaintiffs Fail To Allege Managerial Efforts.*

Scarcity is common in the sale of collectibles and goods. Despite this, Plaintiffs point to Dapper's alleged steps to "ensure scarcity" as essential managerial efforts. Opp. at 24. Dapper is aware of no case adopting this theory,[8] which makes sense. Scarcity alone doesn't make a cardboard trading card a security. And it doesn't make a digital trading card a security, either.

Contrary to Plaintiffs unpled suggestion, it is not Dapper's post-purchase posts that determine the value of a card after its initial sale. Market forces set the price—and the decision whether to buy, trade or sell is the collector's. Collectors explain: "'This is the LeBron James Kobe tribute dunk, shortly after Kobe Bryant passed away,' [one collector] says . . . .When I saw it, I knew instantly I had to have it for my collection.'" AC ¶ 59; *see* Dkt. 36-4. As such, Plaintiffs can't satisfy the efforts of others prong. *Noa v. Key Futures, Inc.*, 638 F.2d 77, 79 (9th Cir. 1980).

### 3. *The Marketplace Doesn't Demonstrate Dapper's Managerial Efforts.*

The claim that Dapper "established a resale market" does not on its own meet Plaintiffs' "efforts of others" pleading burden. *SEC v. Life Partners, Inc.*, 87 F.3d 536, 546 (D.C. Cir. 1996). As Dapper predicted, Plaintiffs rely on a strained reading of *Gary Plastic Packaging Corp. v. Merrill Lynch*, 756 F.2d 230 (2d Cir. 1985), to imply that it does. Opp. at 27–28. The *Gary Plastic*

---

[8] Plaintiffs again rely on the SEC Framework, despite the fact that it is not law. Opp. at 21, 24–25. *See supra*, p. 9.

11

court found that Merrill Lynch *promised* entrepreneurial efforts based on its commitments to repurchase its CDs "if prevailing interest rates dropp[ed]," find new buyers of CDs, and perform "ongoing monitoring of the issuing banks" for creditworthiness. 756 F.2d at 240–41. Plaintiffs allege none of that here, and they again ignore *Life Partners*, whose analysis does not suit their purpose. They have simply not pleaded what is required.

                        4.       *Purchasers' Contractual and Retained Control of Moments Is Dispositive.*

The law is clear that where purchasers retain control, there is no security. MTD at 26–27 (collecting authority). Plaintiffs failed to address the numerous cases Dapper cites for this settled precedent. Instead, they argue investors should be deemed "completely passive" because Dapper maintains a Marketplace for customers. Opp. at 25. They are wrong. To the contrary, Plaintiffs' own PSLRA certifications show that "[o]nce the purchase of [the cards] was made," "[t]he decision to buy or sell was made by the owner of the [card]." *Noa*, 638 F.2d at 79. Dapper tells a consumer neither when to buy a card, nor when to trade a card. Dapper does not tell a consumer when to sell a card, nor does Dapper set the secondary market price. The active collector does all of that. "It is the passive investor for whose benefit the securities laws were enacted[.]" *United States v. Leonard,* 529 F.3d 83, 88 (2d Cir. 2008). Basketball card collectors are not passive investors; their certificates show it, and Plaintiffs allege no facts showing otherwise.

### III.   CONCLUSION

For all of the reasons stated above and in their moving papers, Defendants ask that the Court grant their motion to dismiss with prejudice. *In re Alcon S'holder Litig.*, 719 F. Supp. 2d 280, 283 (S.D.N.Y. 2010). Basketball cards aren't securities.

| | |
|---|---|
| Dated: San Francisco, California<br>         November 30, 2022 | PAUL HASTINGS LLP<br><br>*/s/ Kenneth P. Herzinger*<br>Kenneth P. Herzinger |

Sean D. Unger (Pro Hac Vice)
Erin Zatlin (Pro Hac Vice)
101 California Street, 48th Floor
San Francisco, CA 94111
Tel: 415-856-7000
kennethherzinger@paulhastings.com
seanunger@paulhastings.com
erinzatlin@paulhastings.com

*Attorneys for Defendant Dapper Labs, Inc. and Roham Gharegozlou*