**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEEUN FRIEL, Individually and on behalf of all others similarly situated, | Case No.: 1:21-cv-05837-VM |
| Plaintiff, | |
| v. | |
| DAPPER LABS, INC. AND ROHAM GHAREGOZLOU, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT ....................................... 2

III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ............................ 3

        A.    Numerosity ............................................................................................. 4

        B.    Commonality .......................................................................................... 4

        C.    Typicality ............................................................................................... 5

        D.    Adequacy ............................................................................................... 5

              1.    Adequacy of the Proposed Class Representatives ........................... 6

              2.    Rule 23(g) Adequacy of the Proposed Class Counsel ..................... 6

        E.    Common Questions Predominate and a Class Action is Superior to Other Methods
              of Adjudication ....................................................................................... 7

IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .......... 9

        A.    Standards for Preliminary Approval ......................................................... 9

        B.    A Settlement Should be Preliminarily Approved if it is Procedurally and
              Substantively Fair ................................................................................. 11

        C.    The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2)
              Factors and Remaining Grinnell Factors ................................................ 11

              1.    Plaintiffs and Their Counsel Have Adequately Represented the Class ......... 12

              2.    The Proposed Settlement is the Result of Good Faith Arm's-Length
                    Negotiations by Informed, Experienced Counsel ........................... 12

              3.    The Proposed Settlement is a Highly Favorable Result for the Class in Light
                    of the Settlement's Benefits and the Risks of Continued Litigation .............. 13

                    a)    The Complexity, Expense, and Likely Duration of the Litigation ........ 16

                    b)    The Risk of Establishing Classwide Liability and Damages ................. 16

              4.    The Proposed Method for Distributing Relief is Effective ............................ 17

              5.    Attorneys' Fees and Reimbursement of Expenses ......................................... 18

i

6.    The Parties Have Agreed to a Supplemental Agreement Regarding Opt-Outs ............................................................................................... 18

7.    There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably ............................................................ 19

8.    The Remaining *Grinnell* Factors Support Preliminary Approval .................. 19

V.    THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ........................................................................................................... 21

VI.    PROPOSED SCHEDULE OF EVENTS ......................................................................... 23

VII.    CONCLUSION ................................................................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
2013 WL 7044866 (E.D.N.Y. July 18, 2013) .......................................................................... 8

*Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*,
2021 WL 5847405 (S.D.N.Y. Dec. 9, 2021) ......................................................................... 15

*Amchem Products, Inc., v. Windsor*,
521 U.S. 591 (1997) ............................................................................................................ 3, 8

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993) ..................................................................................................... 15

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ........................................................................... 14

*Carson v. Am. Brands, Inc.*,
450 U.S. 79 (1981) ................................................................................................................... 9

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ..................................................................................................... 4

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................. 6, 10, 18

*Consol. Edison, Inc. v. Ne. Utilities*,
332 F. Supp. 2d 639 (S.D.N.Y. 2004) .................................................................................... 22

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ....................................................................................................... 4

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 12

*Espinoza v. 953 Assocs. LLC*,
280 F.R.D. 113 (S.D.N.Y. 2011) .............................................................................................. 8

*Fogarazzao v. Lehman Bros.*,
232 F.R.D. 176 (S.D.N.Y. 2005) .............................................................................................. 6

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)..................................................................................... 5

*Gordon v. Vanda Pharms. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ....................................................... 13

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) .......................................................................... 21

*In re Ability Inc. Sec. Litig.*,
  2018 WL 11300489 (S.D.N.Y. Sept. 17, 2018)....................................................... 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) .............................................................................. 22

*In re Akazoo S.A. Sec. Litig.*,
  2021 WL 8945767 (E.D.N.Y. Apr. 28, 2021) ......................................................... 22

*In re Am. Bank Note Holographics, Inc.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................... 19

*In re AOL Time Warner S'holder Derivative Litig.*,
  2006 WL 2572114 ...................................................................................................... 15

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
  2021 WL 345790 (E.D.N.Y. Feb. 1, 2021)............................................................... 22

*In re China Med.Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .......................................................... 13

*In re Citigroup Inc. Bond Litig.*,
  296 F.R.D. 147 (S.D.N.Y. 2013) .............................................................................. 19

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ......................................................... 16

*In re CPI Aerostructures S'holder Derivative Litig.*,
  2023 WL 2969279 (E.D.N.Y. Feb. 14, 2023)........................................................... 15

*In re Drexel Burnham Lambert Grp., Inc.*,
  960 F.2d 285 (2d Cir. 1992)......................................................................................... 6

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) .................................................. *passim*

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................ 21

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................... 7

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 4, 20

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................ 9, 20

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) .............................................................. 11

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................ 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................... 5, 9, 20

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................... 20

*In re Platinum & Palladium Commodities Litig.*,
   2014 WL 3500655 (S.D.N.Y. July 15, 2014) ........................................... 11

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................ 6

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................. 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........................................... 16

*In re Take Two Interactive Sec. Litig.*,
   2010 WL 11613684 (S.D.N.Y. June 29, 2010) ........................................ 18

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................ 5

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) ..................................................................... 4

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ................................................................. 4

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .................................... 11, 18

*Marisol A. by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996) ................................................................. 5

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ................................................. 18

*Mills v. Elec. Auto Lite Co.*,
   396 U.S. 375 (1970) ...................................................................................... 14

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) .......................................................... 14

*Moses v. New York Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ................................................................... 10, 12

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ......................................................................... 21

*Palacio v. E\*TRADE Fin. Corp.*,
   2012 WL 2384419 (S.D.N.Y. June 22, 2012) ................................................ 9

*Pasini v. Fishs Eddy, LLC*,
   2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) .............................................. 19

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................................ 8

*Reyes v. Summit Health Mgmt., LLC*,
   2024 WL 472841 (S.D.N.Y. Feb. 6, 2024) .................................................. 12

*S.E.C v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ............................................................................. *passim*

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ............................................................................. 8

*Unite Nat. Ret. Fund v. Watts*,
   2005 WL 2877899 (D.N.J. Oct. 28, 2005) ................................................... 15

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) .................................................................... 21

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ............................................................................. 9

vi

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)...................................................................................................... 3

**Statutes**

15 U.S.C. §77z-1(a)(7)(A)-(F)........................................................................................... 22, 23

28 U.S.C. § 1715.................................................................................................................. 23

**Rules**

Fed. R. Civ. P. 23.......................................................................................................... *passim*

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*,
§ 1788, at 528 (1986)............................................................................................................ 8

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Gary Leuis ("Leuis") and Named Plaintiff John Austin ("Plaintiffs") respectfully submit this memorandum in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.      INTRODUCTION

Plaintiffs and Dapper Labs, Inc. ("Dapper" or the "Company") and Roham Gharegozlou ("Defendants" and, with Plaintiffs, the "Parties"), have agreed to settle this putative class action for $4,000,000 and the adoption and/or continued implementation of the Business Changes as set forth in the terms stated in the Stipulation of Settlement, dated June 3, 2024 ("Stipulation"), filed herewith.[1] By this motion, Plaintiffs respectfully request the Court enter an order: (1) preliminarily certifying the Settlement Class; (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling the Settlement Fairness Hearing at which the Court will consider the request for final approval of the Settlement, the Plan of Allocation of Settlement proceeds, the request for attorneys' fees, expenses and compensatory awards, and entry of the final judgment.

The Settlement was achieved after substantial arm's-length negotiations with the aid of Jed Melnick, Esq., an experienced JAMS mediator. Subject to Court approval, this settlement provides a highly favorable result in light of obstacles that Plaintiffs face in proving their claims. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class's best interest. As required, the proposed content and manner of providing notice satisfies Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

---

[1] Unless otherwise stated, capitalized terms have the same meaning as specified in the Stipulation.

II.     **SUMMARY OF THE LITIGATION AND THE SETTLEMENT**

This Action was commenced on May 13, 2021 in the Supreme Court of the State of New York, New York County, styled as *Friel v. Dapper Labs, Inc., et al.*, Index No. 653134/2021, and asserting claims under Sections 5, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). The Action alleged that assets that Defendants offered and sold – nonfungible tokens ("NFTs") known as NBA Top Shot Moments (or "Moments") – were unregistered securities under the test that the Supreme Court established in *S.E.C v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).

Defendants removed the action to this Court on July 7, 2021. Once removed, Defendants' response to the complaint was continued until after a lead plaintiff was appointed under the PSLRA.

On October 5, 2021, Gary Leuis moved to be appointed lead plaintiff and to approve his selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel. (Dkt. No. 20).  The Court granted the motion on October 8, 2021, appointing Leuis as Lead Plaintiff and Rosen Law as Lead Counsel. (Dkt. No. 23).

On December 27, 2021, Plaintiffs filed the operative Amended Complaint for Violation of the Securities Act of 1933 ("Complaint") (Dkt. No. 27), which expanded Plaintiffs' allegations and added Named Plaintiff John Austin. Pursuant to the Court's rules, on January 27, 2022, Defendants filed a letter detailing deficiencies they believed were in the Complaint. (Dkt. No. 30). Plaintiffs filed a responsive letter on February 3, 2022. (Dkt. No. 31).

As the Parties did not agree on the Complaint's merits, on February 22, 2022, Defendants wrote the Court, pursuant to its individual rules, to request a conference after full briefing on a motion to dismiss. (Dkt. No. 32). On June 24, 2022, the Court granted Defendants' request to file a motion to dismiss and found that a pre-motion conference was unnecessary. (Dkt. No. 33). On August 30, 2022, Defendants filed the motion to dismiss, which was refiled on August 31, 2022, and a request for judicial notice. (Dkt. Nos. 37-40). On October 31, 2022, Plaintiffs filed their

opposition to the motion to dismiss. (Dkt. No. 41). Defendants' motion to dismiss was fully briefed on November 20, 2022. (Dkt. No. 42). On February 22, 2023, the Court denied the motion to dismiss. (Dkt. No. 43). On March 15, 2023, Defendants answered the Complaint. (Dkt. No. 44).

In the Spring of 2023, the Parties began engaging in discovery, including requests for production and interrogatories. Each side answered interrogatories and produced responsive documents. With the Parties' exchange of document productions, numerous meet-and-confers were held concerning e-discovery issues, custodians, and search terms, throughout the second half of 2023. On April 18, 2023, the Court entered a Scheduling Order and Case Management Plan, (Dkt. No. 51), and on July 14, 2023, the Court entered the Parties' Stipulated Confidentiality Agreement and Protective Order. (Dkt. No 53).

On January 23, 2024, following the submission of detailed mediation statements, the Parties participated in an all-day mediation session with Jed Melnick, Esq. of JAMS. After the Parties engaged in a vigorous exchange of views, Mr. Melnick issued a mediator's proposal. The Parties reached the settlement in principle after accepting Mr. Melnick's proposal. Thereafter, subsequent negotiations occurred over the following weeks, with the Parties executing a Term Sheet and agreeing to the Business Changes on April 11, 2024.

## III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Although the trial court may disregard management issues in certifying a settlement class, the proposed class must still satisfy the other requirements of Rule 23. *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997). Specifically, to preliminarily certify a settlement class, the Court must determine whether the threshold requirements of Rule 23(a) and 23(b)(3) are met: numerosity; commonality; typicality; adequacy of representation; and predominance and superiority. *Id.* at 613–15. The Court

need not conduct a rigorous analysis to certify a settlement class, reserving such scrutiny for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class readily meets the standard for preliminary certification.

### A.    Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable" *i.e.*, "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244–45 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is generally satisfied in a securities class action where "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007). Here, there are hundreds of thousands of Settlement Class Members who traded over 33 million Moments during the Settlement Class Period. Thus, the numerosity requirement is satisfied.

### B.    Commonality

The commonality requirement, which "is applied permissively," asks only whether there are "questions of law or fact common to the class." *EVCI*, 2007 WL 2230177, at *13. All that is required is that "named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). To be a common issue, the shared question must be "capable of classwide resolution— which means that [determination of] its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Here, the common issues are whether the Moments that Defendants sold during the Settlement Class Period constitute unregistered securities under the law, and the proper measure of damages therefor. As "[a]ll Class Members make the same legal claims under the federal securities laws. Plaintiffs have alleged common issues of fact and law that affect all Class Members, satisfying the commonality." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 582 (S.D.N.Y. 2008). Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### C.    Typicality

Rule 23(a)(3)'s typicality requirement asks whether "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). "Typical," however, does not mean identical, *EVCI*, 2007 WL 2230177, at \*13, and differences in the amount of damages claimed, or small variations in the fact patterns of individual claims, do not defeat typicality. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at \*10 (S.D.N.Y. Dec. 23, 2009) (differences in acquisition dates, type of securities purchased, and manner of acquisition will not destroy typicality in securities actions); *see also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990).

Plaintiffs alleged a common course of conduct affecting all Settlement Class Members. Namely, they purchased or acquired Moments that were unregistered securities from Defendants, and were harmed in the same way.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class's interests. This requirement traditionally entails a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class

Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

### 1.   Adequacy of the Proposed Class Representatives

Plaintiffs' interests are aligned with, not antagonistic to, those of the proposed Settlement Class. Plaintiffs, who purchased Moments during the Settlement Class Period, are seeking on their own behalf, and on behalf of all class members, to maximize the recovery from Defendants. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest…"). Plaintiffs are adequate class representatives.

### 2.   Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end, the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005). Lead Counsel has extensive experience successfully prosecuting class actions in courts throughout the country, in this District, and before this Court. *See e.g., Nolff, et al., v. Aterian, Inc., et al.,* Case No. 1:21-cv-04323-VM (S.D.N.Y.); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (In considering approval of the $250 million Alibaba securities settlement, the Court stated that "[t]he quality of

representation by [Rosen Law] and Defendants' counsel was high in this case …"); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 429 (S.D.N.Y. 2008) ([T]he Rosen Law firm is well-qualified to serve as lead counsel in this matter."). The firm and its attorneys have achieved significant results for their clients and for certified investor classes. Thus, courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. Lead Counsel's firm resume was previously submitted to the Court as Dkt. No. 22-4.

Lead Counsel spent considerable time on this action for the Settlement Class's benefit including: conducting an exhaustive investigation of Dapper Labs' business practices and the NFT industry; reviewing Defendants' public statements, including press releases, news articles, and interviews; opposing Defendants' pre-motion to dismiss conference letter; opposing Defendants' motion to dismiss; conducting discovery, including serving and answering interrogatories, producing and receiving documents, reviewing documents, and holding numerous meet-and-confers on ESI issues; and preparing for and participating in mediation, including drafting a mediation statement. Lead Counsel's significant securities class action experience makes them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial, or when the prudent course would be to continue litigation.

### E.   Common Questions Predominate and a Class Action is Superior to Other Methods of Adjudication

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the proposed class meets the requirements of Rule 23(b). To certify this Settlement Class, pursuant to Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs satisfy the predominance and superiority criteria.

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). Thus, "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Because "the focus of the predominance inquiry is on defendants' liability, not on damages," *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011), "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). This case illustrates the principle that the predominance requirement can be "readily met" in securities class actions, *Amchem*, 521 U.S. at 625, because, were each class member to bring an individual action, proof of liability would require every plaintiff to demonstrate the same core set of facts, namely, that the Moments at issue constitute unregistered securities under the Supreme Court's *Howey* test.

The superiority inquiry compares class actions to other possible methods of adjudication. Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Because of the PSLRA's notice, consolidation, and Lead Plaintiff provisions, subsections (B) and (C) have already been resolved, and subsection (D) does not apply to settlements. With respect to subsection (A), those who are damaged by securities law violations whose losses do not run into several millions of dollars would likely have no practical recourse. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities

claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12.

Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rules 23(a) and 23(b)(3). Stipulation at ¶3.0. As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Standards for Preliminary Approval

There is a "strong judicial policy in favor of settlements, particularly in the class action context," *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012); *Palacio v. E\*TRADE Fin. Corp.*, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), because such cases tie up judicial resources, require large expenditures of the parties' time and money, and their resolution is usually significantly delayed. *Palacio*, 2012 WL 2384419, at *3 ("Litigation through trial would be complex, expensive, and long."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *4. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, Parties propose to resolve class action litigation through a classwide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as amended in 2018, preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Court must consider "the four factors outlined in Rule 23(e)(2)

holistically." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Rule 23(e)(2)

provides:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may
> approve it only after a hearing and only on finding that it is fair, reasonable, and
> adequate after considering whether: (A) the class representatives and class counsel
> have adequately represented the class; (B) the proposal was negotiated at arm's
> length; (C) the relief provided for the class is adequate, taking into account: (i) the
> costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed
> method of distributing relief to the class, including the method of processing class-
> member claims; (iii) the terms of any proposed award of attorney's fees, including
> timing of payment; and (iv) any agreement required to be identified under Rule
> 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Following the amendments to Rule 23(e)(2), courts in the Second Circuit still consider the

factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).[2] *See Moses*,

79 F.4th at 243 ("Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a

useful framework for considering the substantive fairness of a settlement."); *Christine Asia Co.*,

2019 WL 5257534, at *10 ("Rule 23(e)(2)(C)(i) incorporates the factors set out in [*Grinnell*] …

and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a

settlement is substantively fair, reasonable, and adequate."). Under this multi-factor analysis, the

Settlement merits preliminary approval.

---

[2] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the
reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery
completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks
of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater
judgment; (8) the range of reasonableness of the settlement fund in light of the best possible
recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light
of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.
1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.
2000). The *Grinnell* factors that are not duplicative of Rule 23(e)(2) are factors (2), (3), (6), (7),
(8) and (9).

**B.     A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair**

In conducting a preliminary approval inquiry, a court considers both the '"negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *In re Platinum & Palladium Commodities Litig.*, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). A settlement is procedurally fair when well-informed counsel participate in arm's-length negotiations. *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Likewise, a settlement is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.* at 9. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). Here, the Settlement is both procedurally and substantively fair.

**C.     The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and Remaining *Grinnell* Factors**

At this stage, courts undertake an initial review of the Rule 23(e) factors to determine whether the Settlement merits preliminary approval such that notice of the terms of the proposed Settlement should be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the Class relief is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). As the amendments to Rule 23 did not displace the existing *Grinnell* test, it is also appropriate to consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of

11

discovery completed; defendants' ability to withstand a greater judgment; and the range of reasonableness of the settlement in light of the best possible recovery and the risks of litigation.

### 1. Plaintiffs and Their Counsel Have Adequately Represented the Class

Rule 23(e)(2)(A) evaluates a plaintiff's and counsel's adequacy. Plaintiffs and Lead Counsel have diligently prosecuted this Action on the Settlement Class's behalf. *See* Section III(D), *supra.* Before filing the Complaint, Plaintiffs and Lead Counsel thoroughly investigated the allegations which included, among other things, an extensive review and analysis of Dapper Labs, blockchain technology, and the market for NFTs such as Moments. In addition to Lead Counsel's factual investigation, Lead Counsel prepared the initial complaint and the Complaint, opposed Defendants' pre-motion letter and defeated Defendants' motion to dismiss, engaged in formal discovery, and negotiated a favorable settlement that provides an immediate, and guaranteed, recovery to Settlement Class Members.

### 2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." When evaluating the negotiation process, courts note that a mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Moses*, 79 F.4th at 243 (arms-length negotiations support approval, though they do not give rise to a presumption of fairness); *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024) (approving settlement reached  by "[p]arties [who] were represented by experienced counsel who were then aided in their negotiations by an experienced mediator… after a day-long mediation followed by further negotiations to draft the Settlement Agreement.").

Having exchanged position statements in advance, the Parties participated in an all-day session under mediator Mr. Melnick's oversight. The negotiations were hard-fought, with the Parties exchanging frank views over the course of many hours. The Parties agreed to the Settlement after accepting Mr. Melnick's mediator's proposal. Then, the Parties negotiated the Term Sheet and exchanged drafts of the settlement documentation. The arm's-length nature of the negotiations and an experienced mediator's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See Gordon v. Vanda Pharms. Inc.,* 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (E.D.N.Y. Sept. 15, 2022 ("The participation of [Jed D. Melnick, a] highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) (settlement reached after mediation before Mr. Melnick weighs in favor of approval).

### 3. The Proposed Settlement is a Highly Favorable Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, along with other relevant factors, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Courts recognize that settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate"). Here, the proposed Settlement provides two components of consideration: (1) a cash payment of $4,000,000 for the Settlement Class; and (2) the adoption or continued implementation of the Business Changes. This is a favorable result particularly given the significant risks of continued litigation.

Plaintiffs estimate that Dapper received $112 million from the Moments it sold directly to Settlement Class Members during the Settlement Class Period, and that Dapper also received $41 million in commissions from secondary market transactions on its platform. Thus, the $4 million Settlement Amount represents an approximate 2.6% recovery of the amount Dapper received in connection with Moment transactions during the Class Period. Because "there is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery," *Grinnell*, 495 F.2d at 455 n.2, for the reasons set forth below, a certain recovery of approximately 2.6% recovery of the payments Dapper received for Moments is fair and reasonable in light of the significant risks of continued litigation.[3] *See, e.g., Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"). The Settlement falls within the range of possible approval.

In addition to a considerable monetary payment, Dapper agreed to adopt or continue to implement the Business Changes that addressed the Complaint's allegations and the Court's February 22, 2023 motion to dismiss order (Dkt. No. 43). Notably, Dapper acknowledges that the filing and pendency of this Action was a substantial contributing factor to some or all of the Business Changes. Stipulation at ¶2.3. Courts routinely recognize that a corporation may benefit from settlement consideration "regardless of whether the benefit is pecuniary in nature." *Mills v.*

---

[3] This figure understates the recovery because it assumes a value of zero for the Moments sold during the Class Period. While the ongoing value of Moments is difficult to estimate because Moments are nonfungible tokens, the decline of the market is widely acknowledged. *See, e.g.,* https://www.cryptoslam.io/nba-top-shot/sales/summary.

*Elec. Auto Lite Co.*, 396 U.S. 375, 395 (1970) (holding that non-monetary corporate reforms in a derivative suit provide a benefit to company and stockholders); *Allred on behalf of Aclaris Therapeutics, Inc. v. Walker*, 2021 WL 5847405, at *5 (S.D.N.Y. Dec. 9, 2021) (court noting that the corporate governance reforms provided a substantial benefit, particularly when considering the risks for ongoing litigation). "Despite the difficulties they pose to measurement, nonpecuniary benefits to the corporation may support a settlement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) (citing cases from several circuits holding that non-monetary relief in derivative actions was adequate to support settlement).

Importantly, the Business Changes are designed to address the allegation that the Moments were unregistered securities and improve Dapper's operations. Corporate therapeutics, like the Business Changes, that "serve to prevent and protect [the company] from the reoccurrence of" alleged wrongdoing confer a substantial benefit, warranting settlement approval. *Unite Nat. Ret. Fund v. Watts*, 2005 WL 2877899, at *5-*6 (D.N.J. Oct. 28, 2005); *see also In re CPI Aerostructures S'holder Derivative Litig.*, 2023 WL 2969279, at *6 (E.D.N.Y. Feb. 14, 2023) *citing In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *4 (settlement conferred substantial benefits where "importantly, the governance and compliance provisions memorialized in the Settlement directly address the failure of internal controls that precipitated the instant lawsuits"). The Business Changes, outlined in the Stipulation at ¶2.3(i)-(v), address the Control of the Flow of Blockchain, Control over the Marketplace, Withdrawal Delays, Flow Tokens, and Employee Training and Education. As "the most important factor in evaluating the fairness of the settlement agreement is the benefit to the corporation." *Unite Nat'l,* 2005 WL 2877899, at *2, Plaintiffs submit that the Business Changes, designed as they were to address the allegation that Moments were unregistered securities under the *Howey* test, confer a substantial

benefit on owners of Moments – Settlement Class Members.

        **a)**        **The Complexity, Expense, and Likely Duration of the Litigation**

Although securities class actions have long been deemed complex and expensive, they "have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010). From securing class certification, to surviving a motion for summary judgment, to proving at trial every element of Plaintiffs' claims, as well as having the jury accept Plaintiffs' experts' theory and calculation of damages, this action would take at least several more years to resolve (if no party appealed any adverse ruling along the way). *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*4 (S.D.N.Y. July 21, 2020) ("Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'").

In addition to the time and effort that prosecuting the case through the many stages of litigation would have required, were the Settlement not reached, the Parties would have incurred substantial costs in advance of trial: discovery costs include document production and hosting fees, as well as percipient and expert depositions; and multiple expert reports could be required for class certification and/or summary judgment. These costs could run to hundreds of thousands of dollars for Plaintiffs alone. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses. Again, Defendants do not admit liability and were prepared to contest liability at trial. Thus, the complexity, expense, and likely duration of these proceedings favor approval of the Settlement.

        **b)**        **The Risk of Establishing Classwide Liability and Damages**

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. Although the Court denied Defendants' Motion to Dismiss, this case posed considerable obstacles if the Settlement was not reached. First, class certification would pose

significant hurdles, as Defendants would attempt to point to individualized issues as a way of precluding certification.

Even if a class had been certified, Plaintiffs could have had difficulties locating witnesses to provide sufficient evidence to survive summary judgment, which would have delved into both the intricacies of blockchain technology as well as Defendants' marketing practices. If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction, which would entail a greater-than-normal degree of uncertainty, given the innovative nature of Plaintiffs' claims. Any victory at trial would then have to survive an appeal. Defendants have and continue to deny any liability and were prepared to contest the case on the merits. The Settlement is without any admission of liability by Dapper. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

### 4.  The Proposed Method for Distributing Relief is Effective

As demonstrated below in Section V, both the method of providing the proposed notice and the claims administration process are effective. Dapper provided data to Plaintiffs for the Settlement Class Members. The claims process includes claimants verifying their information which will be inputted into the Plan of Allocation. The Plan of Allocation governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. As there are several hundred thousand Settlement Class Members, to keep administration costs down so Authorized Claimants receive larger recoveries, Authorized Claimants will have an option to receive their payment by check, Electronic Debit Master Card, or in the form of an electronic gift card to Amazon, Target, or Walmart. This method of distributing funds to Authorized Claimants is effective as it is economical and gives them choice over form of payment.

### 5.   Attorneys' Fees and Reimbursement of Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount and recover litigation expenses in an amount not to exceed $40,000. This fee request is in line with other settlements this Court and others have approved in recent cases. *In re Ability Inc. Sec. Litig.*, 2018 WL 11300489, at *1 (S.D.N.Y. Sept. 17, 2018) (Marrero, J.) (awarding attorneys' fees of 33.3% of settlement fund); *Lea*, 2021 WL 5578665, at *12 ("percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit."); *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) ("Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are 'well within the range of reasonableness'") (citing cases).

### 6.   The Parties Have Agreed to a Supplemental Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the Parties. The Parties have agreed to a supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of Moments represented by such opt outs equals or exceeds a certain number, Defendants shall have the option to terminate the Settlement. Stipulation at ¶2.14. As is the usual practice in securities class actions, although the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia,* 2019 WL 5257534, at *15; *In re Take Two Interactive Sec. Litig.*, 2010 WL 11613684, at *11–*12 (S.D.N.Y. June 29, 2010)

(noting side letter agreement, preliminarily approving settlement).

### 7. There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). Here, the Plan of Allocation is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *Pasini v. Fishs Eddy, LLC*, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan of Allocation, set out in the Long Notice, explains how the Settlement proceeds will be distributed among Authorized Claimants. The Plan of Allocation was designed to distribute the Settlement Fund consistent with the unregistered securities claims alleged in this case. It also accounts for transactions in Moments in the direct market from Dapper as well as the secondary, peer-to-peer market. The Plan of Allocation provides that all Settlement Class Members, including Plaintiffs, will receive a *pro rata* payment pursuant to the same formula.

### 8. The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* contains several factors that are not coextensive with those in Rule 23(e)(2). These factors, too, support preliminary approval. The second *Grinnell* factor is premature at this time, as notice of the Settlement has not yet been disseminated. Plaintiffs, however, support the Settlement.

**Grinnell Factor 3:** At the time of Settlement, the Parties were engaging in formal discovery. Each side served and answered interrogatories and produced documents responsive to each side's requests. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425–26

(S.D.N.Y. 2001) ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.") (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Here, where formal discovery was well underway at the time of settlement, Plaintiffs and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 6:** Certifying and maintaining certification through trial is not guaranteed, as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). Because this risk remains through judgment and appeal, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at *6.

*Grinnell* **Factors 7, 8, and 9:** Although the Second Circuit directs the Court to consider whether Defendants could withstand a greater judgment, "the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Indeed, a "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *IMAX*, 283 F.R.D. at 191. Even if a substantial judgment would not deal a death blow, "the mere ability to withstand a greater judgment does not suggest the settlement is

unfair." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *19 (S.D.N.Y. Nov. 8, 2010).

Further, the reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd.*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As explained above, even were Plaintiffs to achieve class certification, at summary judgment, Defendants would redouble their efforts to make the case that the Moments they sold during the Settlement Class Period were not securities under the *Howey* test, and this would entail a considerable amount of new factual material produced in the discovery process. While Plaintiffs and Lead Counsel could possibly obtain a judgment that withstood appeal, a certain recovery now is reasonable, fair and adequate.

As the Settlement falls within the range of reasonableness, and is fair, reasonable, and adequate to Settlement Class members, it should be preliminarily approved.

## V.  THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Notice of a potential classwide settlement must meet the requirements of Rule 23, the PSLRA, and due process. Under Rule 23(c)(2)(B), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in

connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. The requirements of the Rule 23, due process, and the PSLRA are similar. *Compare Vargas, supra, with Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'"), *with* 15 U.S.C. §77z-1(a)(7)(A)-(F).

Here, as Dapper is an electronic platform for which users must have an email address, the most practicable notice program would be the use of various forms of electronic notice to alert Settlement Class Members of the Settlement.  Accordingly, the proposed Notice program includes: (a) sending an email containing the Summary Notice and links to the location of the Long Notice and Claim Form; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator;[4] and (c) disseminating the Summary Notice over *GlobeNewswire* and on *PRNewswire* on separate dates. If after the Claims Administrator sends the email to a potential Settlement Class Member and receives a message that the email is not valid or a "bounce back" email in return from the potential to a Settlement Class Member, the Claims Administrator will mail the Postcard Notice. Courts have held a multi-pronged approach sufficient to satisfy the notice requirements of Rule 23, the PSLRA, and due process. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014). Additionally, Defendants, through the Claims Administrator, will also provide, at their expense,

---

[4] Plaintiffs request Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements. *See, e.g., In re Akazoo S.A. Sec. Litig.*, 2021 WL 8945767, at *2-3 (E.D.N.Y. Apr. 28, 2021) (appointing SCS), and 2022 WL 14915876, at *2 (E.D.N.Y. Oct. 7, 2022) (final judgment approving implementation of notice program).

notice of the Settlement to appropriate federal and state officials to the extent required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, et seq. ("CAFA"). Stipulation at ¶4.3.

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections could be lodged and requests for exclusions to be submitted; (b) the nature, history, and progress of the Action; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) the proposed Plan of Allocation; and (f) the necessary information for any Settlement Class Member to examine the Court records. 15 U.S.C. §77z-1(a)(7)(A)-(F).

Additionally, pursuant to Fed. R. Civ. P. 23(h)(1) the Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, litigation expenses of up to $40,000, and an award to Plaintiffs of up to $20,000, in total, all to be paid from the Settlement Fund. Accordingly, the Notice and the Notice program satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.[5]

## VI.    PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Creating Settlement Website | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶15) |
| Email Summary Notice with Links to the Long Notice and Claim Form | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶17) |
| Publication of the Summary Notice on *GlobeNewswire* | No later than 30 calendar days after entry of the Preliminary Approval Order (¶16) |
| Publication of the Summary Notice on *PRNewswire* | No later than 14 calendar days after dissemination of the Summary Notice on *GlobeNewswire* (¶16) |

---

[5] This closely tracks a model notice published by the Federal Judicial Center. *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses. | No later than 35 calendar days before the Settlement Fairness Hearing. (¶32) |
|---|---|
| Submission Deadline for Claim Forms. | No later than 28 calendar days before the Settlement Fairness Hearing (¶21(a)) |
| Submission Deadline for Requests for Exclusion | No later than 28 calendar days before the Settlement Fairness Hearing (¶23) |
| Submission Deadline for Objections | No later than 28 calendar days before the Settlement Fairness Hearing (¶29) |
| Date for Plaintiffs to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses. | No later than 7 calendar days before the Settlement Fairness Hearing (¶33) |
| Dated for the Settlement Hearing | Approximately 100 days after entry of the Preliminary Approval Order |

## VII.   CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Fairness Hearing.

DATED:      June 3, 2024
            New York, New York                Respectfully submitted,

                                              **THE ROSEN LAW FIRM, P.A.**

                                              /s/ *Phillip Kim*
                                              Phillip Kim, Esq.
                                              Laurence M. Rosen, Esq.
                                              Michael Cohen, Esq.
                                              275 Madison Avenue, 40th Floor
                                              New York, New York 10016
                                              Telephone: (212) 686-1060
                                              Fax: (212) 202-3827
                                              Email: philkim@rosenlegal.com
                                              Email: lrosen@rosenlegal.com
                                              Email: mcohen@rosenlegal.com

                                              *Counsel for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 3, 2024, a true and correct copy of the foregoing document

was served by CM/ECF to the parties registered to the Court's CM/ECF system

*<u>/s/ Phillip Kim</u>*
Phillip Kim