**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEEUN FRIEL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DAPPER LABS, INC. AND ROHAM GHAREGOZLOU,<br><br>Defendants. | Case No.: 1:21-cv-05837-VM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ..... 4

III. ARGUMENT ..... 5

A. Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement Is Fair, Reasonable, and Adequate ..... 5

1. The Procedural Factors Support Approval ..... 5

a. Plaintiffs and Counsel Adequately Represented the Settlement Class ..... 5

b. The Settlement Was Negotiated at Arm's Length ..... 7

2. Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement ..... 7

a. Complexity, Expense and Duration of Litigation ..... 7

b. Risk of Establishing Liability and Damages ..... 9

c. Establishing and Maintaining Certification Through Trial ..... 10

d. Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation ..... 10

3. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii)) ..... 13

4. The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii)) ..... 14

5. Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) ..... 14

6. The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D)) ..... 15

7. The Class's Reaction to the Settlement Supports Approval (*Grinnell* Factor 2) ..... 15

8. The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell* Factor 3) ..... 17

9. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7) ..... 18

B. The Plan of Allocation Fairly and Reasonably Distributes the Recovery ..... 18

C. The Court Should Finally Approve the Settlement Class ..... 19

D. Notice to the Settlement Class Satisfied Due Process ..... 19

IV. CONCLUSION ..... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ........ 6

*Cagan v. Anchor Sav. Bank FSB*,
1990 WL 73423 (E.D.N.Y. May 22, 1990) ........ 11

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........ 13, 15

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ........ 4, 7, 9, 10

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) ........ 6

*Dufoe v. DraftKings Inc.*,
2024 WL 3278637 (D. Mass. July 2, 2024) ........ 8

*Fleming v. Impax Labs. Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ........ 19

*Gordon v. Vanda Pharms. Inc.*,
2022 WL 4296092 (Sept. 15, 2022) ........ 7

*In re Agent Orange Prod. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ........ 10

*In re AOL Time Warner S'holder Derivative Litig.*,
2006 WL 2572114 ........ 12

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
2006 WL 903236, (S.D.N.Y. Apr. 6, 2006) ........ 9

*In re BankAtlantic Bancorp, Inc. Secs. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ........ 12

*In re Blue Apron Holdings, Inc. Secs. Litig.*,
2021 WL 1902475 (E.D.N.Y. May 10, 2021) ........ 5, 18

*In re CPI Aerostructures S'holder Derivative Litig.*,
2023 WL 2969279 (E.D.N.Y. Feb. 14, 2023) ........ 12

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ........ 8

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........ 9, 18

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ........ 15, 17

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) ........ 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ........ passim

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ........ 17

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........ 18

*Khoja v. Orexigen Therapeutics, Inc.*,
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ........ 19

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........ 9

*Mikhlin v. Oasmia Pharm. AB*,
2021 WL 1259559 (E.D.N.Y. Jan. 26, 2021) ........ passim

*Morris v. Affinity Health Plan, Inc.*,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........ 11

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010) ........ 10

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ........ 12

*S.E.C. v. W.J. Howey Co.*,
328 U.S. 293 (1946) ........ 1

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ........ 9

*Thomas v. MagnaChip Semiconductor Corp.*,
2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ........ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ........ 9, 20

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) ........ 12

**Statutes**

15 U.S.C. § 78u-4(a)(7) ........ 5, 21, 22

**Rules**

Fed. R. Civ. P. 23 ........ 3

Fed. R. Civ. P. 23(a) ........ 3

Fed. R. Civ. P. 23(a)(1)-(4) ........ 5

Fed. R. Civ. P. 23(a)(4) ........ 5, 6

Fed. R. Civ. P. 23(b)(3) ........ 3, 5

Fed. R. Civ. P. 23(c)(1)(C) ........ 10

Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ........ 21

Fed. R. Civ. P. 23(e) ........ 1

Fed. R. Civ. P. 23(e)(1)(B) ........ 20

Fed. R. Civ. P. 23(e)(2) ........ 4, 5

Fed. R. Civ. P. 23(e)(2)(A) ........ 5

Fed. R. Civ. P. 23(e)(2)(A)-(D) ........ 4

Fed. R. Civ. P. 23(e)(2)(B) ........ 7

Fed. R. Civ. P. 23(e)(2)(C) ........ 7

Fed. R. Civ. P. 23(e)(2)(C)(i) ........ 7

Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) ........ 7

Fed. R. Civ. P. 23(e)(3) ........ 4

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Gary Leuis and Named Plaintiff John Austin ("Plaintiffs"), on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement and Plan of Allocation.[1]

## I. INTRODUCTION

Plaintiffs seek final approval of a Settlement consisting of a $4,000,000 payment to the Settlement Class and the adoption and/or continued implementation of a series of Business Changes as set forth in the Stipulation. The Settlement of the Action will resolve all claims against Dapper Labs, Inc. ("Dapper" or the "Company"), and Roham Gharegozlou (collectively, "Defendants"). This Action was commenced on May 13, 2021 in the Supreme Court of the State of New York, New York County, styled as *Friel v. Dapper Labs, Inc., et al.*, Index No. 653134/2021, and brings claims under Sections 5, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). The Action alleges that the assets that Defendants offered and sold – nonfungible tokens ("NFTs") known as NBA Top Shot Moments (or "Moments") – were unregistered securities under the test that the Supreme Court established in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298–99 (1946).

Defendants deny that they engaged in any wrongdoing or that Settlement Class Members suffered any damages caused by their actions. *See, e.g.,* Stipulation at 5-6. Consequently, as set forth below and in the Kim Declaration, in light of the risks and uncertainties inherent in all

---

[1] All capitalized terms not otherwise defined have the meanings ascribed to them in the Stipulation of Settlement ("Stipulation") filed on June 3, 2024 (Dkt. No. 67). Unless otherwise noted, citations herein to "Ex.__" refer to the exhibits to the Declaration of Phillip Kim in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Kim Decl."), filed herewith.

litigation as well as the specific hurdles posed here, Plaintiffs believe that the Settlement – a $4,000,000 cash payment as well as a slew of Business Changes designed to address the concerns underlying Plaintiffs' Complaint – represents a favorable resolution of the Action.

Before entering into the Settlement with Defendants, Plaintiffs were fully informed of the strengths and weaknesses of their claims, including the potential defenses that would likely be raised. Lead Counsel spent considerable time on this action for the Settlement Class's benefit, including: (1) conducting an exhaustive investigation of Dapper Labs' business practices and the NFT industry; (2) reviewing Defendants' public statements, including press releases, news articles, interviews and advertising materials; (3) opposing Defendants' pre-motion to dismiss conference letter; (4) opposing Defendants' motion to dismiss; (5) conducting discovery, including serving and answering interrogatories, producing and receiving documents, reviewing documents, and holding numerous meet-and-confer sessions concerning ESI-related issues; (6) drafting a mediation statement and negotiating with Defendants during a full-day JAMS mediation session before reaching an agreement; and (7) engaging in negotiations regarding the terms of the proposed Settlement, including the Business Changes set forth therein. Kim Decl. at ¶12. Based upon their thorough investigation of the facts and applicable law, Plaintiffs and Lead Counsel believe that the proposed Settlement meets all standards for approval and is in the best interests of the Settlement Class. For these reasons, Plaintiffs respectfully move the Court for final approval of the Settlement.

Plaintiffs also respectfully submit that the Court should approve the Plan of Allocation and the Notice provided to potential Settlement Class Members. Regarding the former, Plaintiffs developed the Plan of Allocation to ensure that the proceeds of the Net Settlement Fund would be distributed equitably and fairly among Settlement Class Members based upon their relative

damages, in line with Plaintiffs' theory of the case. Kim Decl. at ¶¶14-16. With respect to the latter, the notice program satisfies Rule 23 and due process by providing the "best notice … practicable under the circumstances" of this case. After the Court approved the contents of the Long Notice, Summary Notice and Postcard Notice (Dkt. No. 71 at 4), the Claims Administrator, Strategic Claims Services ("SCS"), provided notice to potential Settlement Class Members in accordance with the program set forth in the preliminary approval order. *See* Dkt. No. 71 at 4-6. As explained in the Declaration of Sarah Evans Concerning: (A) Emailing of the Summary Notice and Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Declaration" or "Evans Decl.") (Ex. 1), in total, 676,471 potential Settlement Class Members were sent notice of the Settlement by either email of the Summary Notice and link to the Long Notice and Proof of Claim Form on the Claims Administrator's dedicated webpage for the Action, https://frielvdapperlabssettlement.com/, or Postcard Notice. Ex. 1, ¶5. The Claims Administrator also published the Summary Notice on *GlobeNewswire* on July 3, 2024 and *PRNewswire* on July 17, 2024, in accordance with the Court's preliminary approval order. *Id*. at ¶8 and Ex. D to Evans Decl. On June 21, 2024, prior to the notice, the Claims Administrator added the Long Notice, Proof of Claim and Release Form, and other important documents to the dedicated webpage for the Action, mentioned above. *Id*. at ¶10. SCS also established a toll-free telephone number to assist potential claimants. *Id*. at ¶9. To date, one objection to the Settlement has been received and 201 persons have sought exclusion from the Settlement Class, 55 of which exclusions are valid, out of the 676,471 potential Settlement Class Members notified. *Id.* at ¶¶5, 11-12 and Exs. E, F to Evans Decl.

Finally, the Settlement Class meets the requirements of Rule 23(a) and (b)(3) and merits certification. Plaintiffs respectfully request that the Court enter a final judgment granting approval

of the Settlement, Plan of Allocation and Notice, and certifying the Settlement Class.

## II. STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

In this Circuit, the Court's decision to approve a class action settlement as "fair, reasonable, and adequate" as required by Fed. R. Civ. P. 23(e)(2), is informed by two sets of considerations. First, since 2018, Rule 23(e)(2)(A)-(D) requires the Court to consider four core questions:

> (A) have the class representatives and class counsel adequately represented the class;
> (B) was the proposed settlement negotiated at arm's length;
> (C) is the relief provided for the class adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) does the proposal treats class members equitably relative to each other.

Second, because these considerations were not intended to displace other factors courts deem relevant to settlement approval, the following factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[2] some of which overlap with the inquiry to be undertaken pursuant to Rule 23(e)(2)(A)-(D), remain relevant to the Court's determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

As set forth below, the Settlement satisfies both Rule 23(e)(2)(A)-(D) and the applicable, non-duplicative *Grinnell* factors.

---

2 Unless noted, internal citations and quotation marks are omitted from case citations.

Akin to the Settlement itself, a Plan of Allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *See, e.g., In re Blue Apron Holdings, Inc. Secs. Litig.*, 2021 WL 1902475, at *1 (E.D.N.Y. May 10, 2021). The Court must also determine whether the Settlement Class comports with each of the prerequisites for certification, to wit "numerosity," "commonality," "typicality," and "adequacy" (Rule 23(a)(1)-(4)), as well as "predominance" and "superiority" (Rule 23(b)(3)), and whether the notice given to Settlement Class Members satisfies due process by complying with the requirements of Rule 23(c)(2)(B) and 15 U.S.C. § 78u-4(a)(7).

## III. ARGUMENT

### A. Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires a Court to review both the procedural and substantive fairness of the class action settlement it is asked to approve: "[P]aragraphs (A) and (B) are 'procedural' factors that address the 'conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas the factors listed in paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *3 (E.D.N.Y. Jan. 26, 2021). The *Grinnell* factors, applied by courts in the Second Circuit for decades prior to the 2018 amendment to Rule 23(e)(2), are "clarif[ied] and supplement[ed]" by Rule 23(e)(2). 2021 WL 1259559 at *3. As set forth below, the Settlement satisfies both sets of Rule 23(e)(2) factors and the remaining *Grinnell* factors.

#### 1. The Procedural Factors Support Approval

##### a. Plaintiffs and Counsel Adequately Represented the Settlement Class

A Rule 23(e)(2)(A) assessment "looks to" Rule 23(a)(4) case law pertaining to adequacy of the class plaintiffs and their counsel. *In re Payment Card Interchange Fee & Merch. Disc.*

*Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019). Thus, to "uncover conflicts of interest between the named parties and the class they seek to represent," *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), under Rule 23(a)(4), a "[d]etermination of adequacy typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Plaintiffs' claims are coextensive with – not antagonistic to – those of the Settlement Class: Because Plaintiffs purchased Moments – the assets alleged to be unregistered securities – during the Settlement Class Period, they "shared the common goal of maximizing recovery" for the Settlement Class. *See In re Payment Card*, 330 F.R.D. at 32. In addition to maximizing the financial recovery for the Class, Plaintiffs' interests are completely aligned as to the Business Changes, as these corporate therapeutics are designed to address the allegation that the Moments were unregistered securities—an allegation that underpins each Settlement Class Member's claim in exactly the same way. Accordingly, no conflicts exist. Plaintiffs also oversaw the prosecution of the Action and the settlement process, regularly communicating with counsel.[3]

Lead Counsel has a successful history of prosecuting securities claims on behalf of injured investors. Ex. 5 (firm resume). Counsel vigorously prosecuted this case, *inter alia*, conducting a thorough investigation of Dapper Labs' business practices, defeating Defendants' motion to dismiss, conducting discovery, and negotiating the Settlement with the assistance of the mediator. *See* Kim Decl. at ¶12. Consequently, Lead Counsel came to fully understand both the strengths and weaknesses of the claims before entering into the Settlement. *Id*.

---

[3] *See* Ex. 3, Declaration of Gary Leuis ("Leuis Decl.") at ¶¶4-5; Ex. 4, Declaration of John Austin ("Austin Decl.) at ¶¶4-5.

**b. The Settlement Was Negotiated at Arm's Length**

With a long and expensive road of discovery, class certification and summary judgment briefing before them, the Parties decided to explore the possibility of settlement and retained the services of Jed Melnick of JAMS for this purpose. After a frank exchange of positions – both in mediation statements and during the course of a day-long session – with Mr. Melnick's assistance, the parties arrived at the Settlement. Kim Decl. at ¶¶11-12 and Ex. 2 at ¶¶11-13 (Declaration of Jed Melnick). Settlements reached after vigorous negotiations before an informed mediator satisfy Rule 23(e)(2)(B). *See Mikhlin*, 2021 WL 1259559, at *5; *Gordon v. Vanda Pharms. Inc.*, 2022 WL 4296092, at *4 (Sept. 15, 2022) (arm's-length settlement reached after "an adversarial day-long mediation before Jed D. Melnick, a neutral third-party").

**2. Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal…"[4] (Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv) are discussed below). In balancing the various factors, "[s]ettlement is favored if settlement results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re Payment Card*, 330 F.R.D. at 36 (citations omitted).

**a. Complexity, Expense and Duration of Litigation**

**"**In general, securities class actions are recognized by courts as 'notably difficult and

---

4 Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re Payment Card*, 330 F.R.D. at 36 ("The first factor – costs, risks, and delay of trial and appeal – subsumes several *Grinnell* factors …").

notoriously uncertain to litigate.'" *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (citing cases). For this reason, the Court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Mikhlin*, 2021 WL 1259559 at *5. In a securities case, there are "significant legal and factual obstacles" to prevailing at every stage of the litigation. *Id.* This is especially true here for a number of reasons.

First and foremost, this unregistered securities case presents a host of novel issues and cutting-edge legal theories. The gravamen of this case is Plaintiffs' claims that Moments are unregistered securities, and this case is the first in which a court has ruled on whether any type of NFT satisfies the *Howey* test at the pleading stage. While a recent district court has found this Court's opinion persuasive in adjudicating a motion to dismiss in a similar matter, *see Dufoe v. DraftKings Inc.*, 2024 WL 3278637, at *4, 6 (D. Mass. July 2, 2024) ("Both parties' briefs cite *Dapper Labs* as the leading case on whether NFTs can be considered a security"… "the Court is persuaded that the reasoning of *Dapper Labs* applies here"), courts' analyses of how the securities laws apply to crypto assets in general have been widely divergent and unpredictable. Moreover, the present case involving Moments presents even greater complications than the run-of-the-mill blockchain or cryptocurrency case due to Moments' nonfungible nature.

Indeed, Defendants would certainly seize on Moments' nonfungibility and argue that it raises individualized issues in an attempt to preclude class certification, and they would likely put forth related claims at summary judgment and/or trial. Due to the complicated nature of crypto assets and blockchain technology, Plaintiffs' claims would probably lead to *Daubert* motions and set up complicated and expensive battles of the experts, both on merits-related issues and damages.

Adding these unique challenges to the expense, effort, and time occasioned by discovery, trial, and appeals that are present in all litigation, it becomes clear why "securities class action

litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, 2006 WL 903236, at *8, (S.D.N.Y. Apr. 6, 2006); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks … through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

**b. Risk of Establishing Liability and Damages**

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005). Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

Here, Plaintiffs' allegation that Moments constitute unregistered securities, although well-pleaded, faces meaningful obstacles. Establishing liability under the *Howey* test would require a fact-intensive dive into blockchain technology for the purpose of probing Dapper Labs' pooling of investor funds, control over the Marketplace for Moments and the Flow blockchain, and other hotly contested issues. At the same time, Defendants are likely to raise issues concerning damages

in light of the complication that many investors purchased Moments in packs and then sold a subset of the Moments in the Marketplace, or perhaps raise domesticity issues under *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010). Plaintiffs are confident in their ability to withstand these challenges, just as they prevailed at the motion to dismiss stage, but proceeding with Plaintiffs' claims entail substantial risks for the Class.

#### c. Establishing and Maintaining Certification Through Trial

Because "[c]ourts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied … this factor ... weighs in favor of settlement" where "it is likely that defendants would oppose class certification if the case were to be litigated." *Mikhlin*, 2021 WL 1259559, at *6. Here, although Defendants agreed to the certification of a class, they did so "[f]or the sole purpose of this Settlement." Stipulation at ¶3.0 (Dkt. No. 67 at 25); *Mikhlin, id.* (noting the same). Defendants would have certainly contested class certification and rehashed their arguments, first made on the motion to dismiss, that the nonfungible nature of Moments as well as the personal preferences expressed in each investor's collection of Moments raise individualized issues ill-suited for class-wide resolution. Finally, even were Plaintiffs to prevail on a class certification motion, Rule 23(c)(1)(C) provides that a class certification order can be "altered or amended before final judgment."

#### d. Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

As Judge Weinstein explained nearly 40 years ago: "The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate. Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984); *Grinnell*, 495 F.2d at 455 n.2 ("there is no

reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.”).

Here, Plaintiffs estimate that Dapper received $112 million from the Moments it sold directly to Settlement Class Members during the Settlement Class Period, and that Dapper also received $41 million in commissions from secondary market transactions on its platform. Thus, the $4 million Settlement Amount represents an approximate 2.6% recovery of the amount Dapper received in connection with Moments transactions during the Class Period.[5] For the reasons set forth below, a certain recovery of approximately 2.6% of the payments Dapper received for Moments is fair and reasonable in light of the significant risks of continued litigation. *See, e.g., Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the “best possible recovery would be approximately $121 million.”); *In re 3D Systems Securities Litig.*, 21-cv-01920 (E.D.N.Y), Dkt Nos. 75, 67 at 13 (approving $4,000,000 class settlement that was just below 1% of maximum recoverable damages estimated by Plaintiffs); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (“a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair”).

While the considerable monetary payment alone would warrant approval, the Settlement also contains significant corporate therapeutics, with Dapper agreeing to adopt or continue to implement the Business Changes that address the Complaint’s allegations and the Court’s February 22, 2023 motion to dismiss order. Dkt. No. 43. These Business Changes, outlined in the

---

[5] This figure understates the true recovery because it assumes a value of zero for the Moments sold during the Class Period. While the ongoing value of Moments is difficult to estimate because Moments are nonfungible tokens, the decline of the market is widely acknowledged. *See, e.g.,* https://www.cryptoslam.io/nba-top-shot/sales/summary.

Stipulation at ¶2.3(i)-(v), address the Control of the Flow Blockchain, Control over the Marketplace, Withdrawal Delays, Flow Tokens, and Employee Training and Education. Dapper acknowledges that the filing and pendency of this Action was a substantial contributing factor to some or all of the Business Changes. Stipulation at ¶2.3. These Business Changes – designed to address the allegation that Moments were unregistered securities under the *Howey* test – significantly enhance the already-sizeable Settlement, and push it further into the range of reasonableness. *See, e.g., In re CPI Aerostructures S'holder Derivative Litig.*, 2023 WL 2969279, at *6 (E.D.N.Y. Feb. 14, 2023) *citing In re AOL Time Warner S'holder Derivative Litig*., 2006 WL 2572114, at *4 (settlement conferred substantial benefits where "importantly, the governance and compliance provisions memorialized in the Settlement directly address the failure of internal controls that precipitated the instant lawsuits").

Moreover, a possible best-case result could be derailed either before or after the fact: If Plaintiffs fail to prove at trial that the Moments are securities rather than merely consumer goods analogous to old fashion basketball cards, judgment would be entered in favor of Defendants. Alternatively, a total victory at trial could be reversed on a post-trial motion, *see, e.g., In re BankAtlantic Bancorp, Inc. Secs. Litig.*, 2011 WL 1585605, at *18, 38 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012), or on appeal. *See, e.g., Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million verdict).

In sum, because "a misstep at any point in the litigation could have greatly reduced the damages," a "complete and total victory" at trial "occurs with the regularity of unicorn sightings." *West Palm Beach Police Pension Fund v. DFC Global Corp.*, 2017 WL 4167440 at *6 (E.D. Pa. Sept. 20, 2017). In fact, since 2019, the median settlement in securities class actions has remained

at or under just 1.8% of investor losses. Ex. 6 at 26, Figure 22 (NERA Economic Consulting report). The Settlement here confers a significant and immediate benefit to the Settlement Class and takes away sizeable uncertainty. It falls well within the range of reasonableness, and should be approved.

**3. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))**

The Settlement proceeds will be allocated to Settlement Class Members who timely submit valid Proof of Claim and Release Forms in accordance with the Plan of Allocation. As provided in the preliminary approval Order, at ¶21(a)-(c), the Claims Administrator has processed and will continue to process claims under Lead Counsel's guidance, and has allowed and will continue to allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims. *See id*. After the Court enters a distribution order, the Claims Administrator will implement the distribution *pro rata* according to the Plan of Allocation. *See* Dkt. No. 67-2 at 5-6. As there are hundreds of thousands of Settlement Class Members, to keep administration costs down so Authorized Claimants receive larger recoveries, Authorized Claimants will have an option to receive their payment by check, Electronic Debit Master Card, or in the form of an electronic gift card to Amazon, Target, or Walmart. *See* Dkt. No. 67-3 at 3-4. This method of distributing funds to Authorized Claimants is effective as it is economical and gives them choice over the form of payment they receive.

If funds remain in the Net Settlement Fund, the Claims Administrator will conduct a second *pro rata* distribution, if warranted. *See* Dkt. No. 67-2. No funds will be returned to Defendants. *Id*. Substantially similar methods for claims processing and distributing settlement proceeds are standard in securities and other class actions and have proven to be effective. *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019); *In re Payment Card*, 330

F.R.D. at 40-41. For this reason, the Court already determined (in its preliminary approval Order) that the proposed protocol does not impose an undue burden on Settlement Class Members. *See* Preliminary Approval Order, Dkt. No. 71 at ¶21(a)-(c).

**4. The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))**

The Settlement is fair and reasonable taking into account the requested attorneys' fees of one-third of the Settlement Fund. As discussed in detail in the Fee Memorandum filed herewith, the fee request the Court is being asked to approve is reasonable in light of counsel's skill, efforts, and time investment, the risks counsel faced, and the overall benefit to the Settlement Class. Courts in this Circuit routinely find that requests for attorneys' fees totaling one-third of the settlement fund are "well within the range of reasonableness," *Mikhlin*, 2021 WL 1259559 at *7 (citing cases), with such awards "very common" where the recovery is less than $10 million. *Id; see also In re 3D Systems Securities Litig.*, 21-cv-01928 (E.D.N.Y. Jan. 1, 2024), Dkt No. 75 (awarding attorneys' fees of one-third of $4,000,000 settlement). In any event, approval of the Settlement is determined separate and apart from the Court's decision on the fee award. *See* Stipulation at ¶7.3.

**5. Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))**

As previously disclosed, the Parties entered into a Supplemental Agreement giving Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain threshold opt out. Stipulation at ¶2.14. "[T]o prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts," *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017), the numerical threshold that triggers the right to terminate has not been disclosed. Such agreements are common in securities class action settlements and pose no obstacle to final approval of the

Settlement. *Christine Asia,* 2019 WL 5257534, at *15. No other related or supplemental agreements exist.

**6. The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D))**

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. The Plan of Allocation provides no preferential treatment to Plaintiffs and distributes funds on a *pro rata* basis to each Settlement Class member who timely submits a valid claim based on recognized claims during the Settlement Class Period. Lead Counsel developed the Plan of Allocation to closely track the theory of the case as discussed more in Part B, below. Kim Decl. at ¶¶14-16. A plan that allocates funds on a *pro rata* basis to claimants by recognized loss calculated based on Plaintiffs' theory of the case has been found to be an appropriate and fair method for accounting for differences among class members' claims. *See Mikhlin*, 2021 WL 1259559 at *8; *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (plan that "tracks the theory of damages asserted by plaintiffs …. is reasonable and fair to the class").

**7. The Class's Reaction to the Settlement Supports Approval (*Grinnell* Factor 2)**

The second *Grinnell* factor, the Settlement Class's reaction to the proposed Settlement, overlaps with Rules 23(e)(4) and 23(e)(5), which provide Settlement Class Members the right to either object to the Settlement or to request exclusion therefrom. Here, the reaction of the class has been overwhelmingly positive.

To date, 676,471 potential Settlement Class Members were sent notice of the Settlement either by emailed Summary Notice with a link to the Long Notice, Proof of Claim and Release Form, or by mail. Evans Decl. at ¶5 and Exs. A, B and C to Evans Decl. Specifically, SCS emailed Summary Notice and the link to the Long Notice, Proof of Claim and Release Form to the 642,235

potential Settlement Class Members with verified email addresses, and the remaining 34,236 for whom no valid email address was available were mailed a copy of the Postcard Notice. *Id*. at ¶5. SCS also published Summary Notice on both *GlobeNewswire* and *PRNewswire. Id.* at ¶8 and Ex. D to Evans Decl. The Long Notice, Postcard Notice, and Summary Notice informed Settlement Class Members that they may choose their own counsel should they object to or opt to be excluded from the Settlement. Exs. A, B and C to Evans Decl.

The deadline to file objections or exclusions is August 30, 2024. Evans Decl. at ¶11-12. To date, 201 persons asked to be excluded from the Settlement Class, however, only 55 of these requests are valid. *Id*. at ¶11; Ex. E to Evans Decl. SCS has notified the 146 individuals whose requests were invalid of the inadequacy of the exclusion request and has not received a response to date. *Id*. at ¶11.

To date, one Settlement Class Member has objected to the Settlement. *Id*. at ¶12; Ex. F to Evans Decl. While Lead Counsel sympathizes with the objector, who feels wronged by Defendants' conduct, there are multiple reasons that the objection is not grounds for the Court to reject the Settlement. *See* Ex. F to Evans Decl. First, the objector's contention that Dapper Labs released an influx of supply of Moments into the market to the detriment of certain early adopters like herself is not consistent with Lead Counsel's view of the facts or germane to the unregistered securities claim that Lead Counsel has advanced here, and it is the prerogative of Lead Counsel to investigate and pursue the legal theories that it deems best for Plaintiffs and the Settlement Class. *See id*. Next, the objector's position that the Settlement is inadequate in light of Dapper's phenomenal profits during the Settlement Class Period appears to conflate the dollar value of all transactions taking place in the Marketplace with the profits of Dapper Labs. *See id*. Finally, the objector's view that the Settlement is unjust based on the analogy of Defendants having robbed a

bank for $500 million and needing to return only $5 million is inapt for a number of reasons, but perhaps most importantly it exaggerates the maximum recovery while ignoring the many difficulties that the Settlement Class faces in proving its case at every stage in the litigation and the consequent very real possibility that, had the case continued, the Settlement Class might have recovered far less than the proposed Settlement or nothing at all. Therefore, this objection should be overruled.

Plaintiffs will respond to any subsequent duly lodged objections, if any, in their reply. That there has only been one objection and 201 requests for exclusion (just 55 of which are valid), out of a total of 676,471 potential Settlement Class Members notified in total signals a resoundingly positive response, further supporting approval of the Settlement. *See* Evans Decl. at ¶¶5, 11-12.

#### 8. The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell* Factor 3)

Lead Counsel have diligently prosecuted this Action on the Class's behalf, including by conducting an exhaustive investigation of Dapper Labs and the NFT industry; reviewing Defendants' public statements; opposing Defendants' motion to dismiss; and conducting discovery, including serving and answering interrogatories, producing and receiving documents, and reviewing the documents that Dapper produced. Kim Decl. ¶¶12-13. Thus, before entering into the Settlement, Lead Counsel and Plaintiffs understood the strengths and weaknesses of their case, as Lead Counsel had received and reviewed significant discovery from Dapper prior to the mediation session. *See Luxottica*, 233 F.R.D. at 312 (settlement approved where counsel had "a clear view of the strengths and weaknesses of the case") (citing *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986)). For these reasons, *inter alia*, and after consulting with counsel, Plaintiffs decided that they had sufficient

understanding of the strengths and weaknesses of the action to resolve it at this juncture.[6] Kim Decl. ¶13. Accordingly, the stage of proceedings weighs in favor of approving the Settlement.

#### 9. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

Had Plaintiffs not settled their claims and decided to proceed in litigation – even assuming Plaintiffs secured a total victory at trial and on any appeal – any judgment would have been far into the future. That could raise collectability concerns, given the volatile nature of the market for crypto assets in general and NFTs in particular. Thus, although Dapper may have been able to withstand a greater judgment, "the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate," *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (citing cases), especially where other applicable factors weigh heavily in favor of settlement approval. *Id.*

### B. The Plan of Allocation Fairly and Reasonably Distributes the Recovery

A Plan of Allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *Blue Apron*, 2021 WL 1902475, at *1. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

Here, the calculation of each Settlement Class Member's Recognized Claim under the Plan of Allocation, which was prepared in accordance with Plaintiffs' theory of the case (Kim Decl. at ¶¶14-16), is explained in detail in the Long Notice: For Moments purchased directly from Dapper, the Recognized Claim is the total amount paid for the Moments purchased, and for Moments

[6] *See* Ex. 3, Leuis Decl. at ¶¶4-5; Ex. 4, Austin Decl. at ¶¶4-5.

purchased in the secondary market, the Recognized Claim is 5% of the total amount paid for the Moments purchased. Dkt. No. 67-2 at 6-7. This Plan of Allocation follows from Plaintiffs' theory of the case, as Plaintiffs alleged that Dapper receives the purchase price of direct sales of Moments as revenue and also receives a 5% transaction fee on the secondary market transactions. Compl., Dkt. No. 27 at ¶66. Lead Counsel believes that the proposed Plan provides a fair, reasonable and rational method to allocate the Settlement Fund among Settlement Class Members. Kim Decl. at ¶16. To date, no objections to the Plan have been received, suggesting that Settlement Class Members find the Plan to be fair and reasonable. *See* Evans Decl. at ¶12. Accordingly the proposed Plan of Allocation merits final approval.

**C. The Court Should Finally Approve the Settlement Class**

Plaintiffs' memorandum of law in support of their motion for preliminary approval of the Settlement set forth the bases for the certification of a Settlement Class. Dkt. No. 70 at 3-9. Applying the relevant legal standards to the facts and circumstances of this case, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3), and issued its Order preliminarily certifying a class for settlement purposes. Dkt. No. 71 at 2-3. Nothing has transpired since preliminary approval was granted that would alter the Court's findings. For the reasons set forth in both Plaintiffs' preliminary approval papers and the Court's ruling, the Court should grant final certification of the Settlement Class. *See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating by reference class certification analysis from preliminary approval order as no facts had changed); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673 at *3 (S.D. Cal. Nov. 30, 2021) (same).

**D. Notice to the Settlement Class Satisfied Due Process**

Rule 23(e) and due process require that notice of a class-wide settlement be "reasonable"

*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Here, the notice program satisfied due process with respect to both the manner of distribution and the substance of the Notice provided to Settlement Class Members.

The protocol followed by the Claims Administrator was earlier approved in the Court's preliminary approval Order of June 4, 2024. Dkt. No. 71 at ¶¶15-18. Since that time, and in accordance with the deadlines set forth therein, as detailed above: (a) a total of 676,471 Settlement Class Members were sent individual notice of the Settlement via a combination of emails containing the Summary Notice and links to the Long Notice, Proof of Claim and Release Form, or Postcard Notice; (b) Summary Notice was published on *GlobeNewswire* and *PRNewswire* on July 3 and 17, 2024, respectively; and (c) potential Settlement Class Members had access to both a 24/7 dedicated webpage containing the relevant documents pertaining to the Settlement and a toll-free telephone number to seek further information about the Settlement and/or assistance from the Claims Administrator. Evans Decl., at ¶¶5-10. The Notice Plan executed by the Claims Administrator provided notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Long Notice informs Settlement Class Members of, among other things: (1) the nature of the Action; (2) the Settlement Class definition; (3) the claims and defenses asserted; (4) a description of the terms of the Settlement; (5) the right of Settlement Class Members to enter an appearance through counsel of their own choosing; (6) the right of Settlement Class Members to request exclusion from the Settlement Class, and instructions on how and when to do so; (7) the right of Settlement Class Members to object to any aspect of the Settlement, including the Plan of Allocation and the request for attorneys' fees and litigation expenses, along with instructions on how and when to do so; (8) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (9) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); Evans Decl., Ex. B (Long Notice).

In addition to this detailed information, the PSLRA requires the notice to include the amount of attorneys' fees and expenses sought, an estimate of per share damages recovered, as well as the per share cost of attorneys' fees and expenses. 15 U.S.C. §78u-4(a)(7). The Long Notice includes this required information, advising that Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund plus interest, as well as reimbursement of litigation expenses up to $40,000, and awards to Plaintiffs of $20,000 (in total), directly related to their representation of the Settlement Class. Evans Decl., Ex. B at 1.

The notice program: (1) provided the information necessary for Settlement Class Members to evaluate the Settlement and fee request so that they could decide (a) whether and how to timely file a claim to share in the recovery or seek exclusion from the Settlement or (b) whether and how to object to the terms of the Settlement or the fees requested; and (2) followed the dissemination of Notice protocol set forth in the preliminary approval Order. Therefore, the notice provided to

Settlement Class Members satisfied Rule 23(e), 15 U.S.C. §78u-4(a)(7) and due process.

## IV. CONCLUSION

For the reasons stated above, in the preliminary approval papers filed on June 3, 2024, in the declarations filed in support of the motion, in any reply papers, and at the September 27, 2024, approval hearing, Plaintiffs respectfully request that this Court grant final approval of the Settlement, approve the Plan of Allocation, and certify the Settlement Class.[7]

Dated: August 23, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: *<u>/s/ Phillip Kim</u>*
Phillip Kim
Michael Cohen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: mcohen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

---

[7] A proposed order will be filed with Plaintiffs' reply papers.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system

*/s/ Phillip Kim*
Phillip Kim