**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEEUN FRIEL, Individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>DAPPER LABS, INC. AND ROHAM GHAREGOZLOU,<br><br>　　　　　Defendants. | Case No.: 1:21-cv-05837-VM |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. DETERMINATION OF AUTHORIZED CLAIMS ..................................................... 1

    A. Properly Documented Claims ............................................................................ 2

    B. Deficient and Ineligible Claims ......................................................................... 3

        1. Claims Rejected for Reasons Other than Inadequate Documentation ........ 3

III. DISTRIBUTION OF THE NET SETTLEMENT AMOUNT ....................................... 3

IV. RELEASE OF CLAIMS ................................................................................................ 5

V. RECORDS RETENTION AND DESTRUCTION ....................................................... 7

VI. CONCLUSION .............................................................................................................. 7

Lead Plaintiff Gary Leuis and Named Plaintiff John Austin (collectively, "Plaintiffs"), respectfully seek distribution of the Net Settlement Fund to the Authorized Claimants of the Settlement, and the entry of the accompanying [Proposed] Order Granting Motion for Distribution of Class Action Settlement Funds ("Distribution Order"). The accompanying Declaration of Sarah Evans Concerning the Results of the Claims Administration Process ("Evans Declaration" or "Evans Decl."), attached hereto and incorporated herein by reference, describes the specifics of the proposed plan for distribution of the Net Settlement Fund.

## I. INTRODUCTION

On June 4, 2024, the Court entered the Order Preliminarily Approving Class Action Settlement and Providing for Notice (Dkt. No. 71, the "Preliminary Approval Order"). On October 28, 2024, the Court signed the Order Awarding Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Plaintiffs (Dkt. No. 86) and the Order and Final Judgment (Dkt. No. 87).

The Court-appointed Claims Administrator, Strategic Claims Services ("SCS"), has completed all analyses and accounting procedures in connection with the submitted Proof of Claim Forms (hereafter referred to as "claims") for this Settlement and finalized its determination of authorized and ineligible claims. Evans Decl. ¶¶6-7. Plaintiffs respectfully request that the Court authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits B-1 and B-2 to the Evans Declaration.

## II. DETERMINATION OF AUTHORIZED CLAIMS

Pursuant to the Preliminary Approval Order, all claims were to be submitted to the Claims Administrator, no later than August 30, 2024. Preliminary Approval Order ¶21(a). The Claims Administrator has now finalized its determination of which claims are authorized and which are ineligible. Evans Decl. ¶¶6-7.

### A.     Properly Documented Claims

SCS identified 30,661 properly documented valid claims. Evans Decl. ¶7(a). Of these, 30,285 claims were timely (*i.e.*, received on or before August 30, 2024), and 376 claims were untimely, but otherwise valid and received before September 25, 2025 ("Late But Otherwise Valid Claim"). *Id*. These valid claims represent total Recognized Losses of $25,698,910.40. *Id.* Plaintiffs respectfully request that this Court permit SCS to include in the distribution Late But Otherwise Valid Claims, because these claims have not delayed the distribution of the Net Settlement Fund to the Settlement Class or otherwise prejudiced any Authorized Claimant as SCS received them during its processing of all claims. *Id.*; *see also In re Authentidate Holding Corp. Sec. Litig.*, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims"); *Grottano v. City of New York*, 2021 WL 6427554, at *1 (S.D.N.Y. Dec. 17, 2021) ("[A] district court overseeing settlement distribution has inherent power to accept late claims.") *citing In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitted the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *Jones v. City of New York,* 2024 WL 4307774, at *5 (S.D.N.Y. Sept. 26, 2024) (allowing late but otherwise valid claims when there is showing that the administrative costs would not be prejudicial). Accordingly, Plaintiffs respectfully request that the Court approve the full 30,661 properly documented valid claims as listed in Exhibits B-1 and B-2 of the Evans Declaration.

To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *See In re Citigroup Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large

class action settlement, such as this one, 'a cutoff date is essential and … the matter must be terminated.'"); *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action"). SCS has not processed any claims or responses to rejections received after these dates due to extreme lateness and because their inclusion would have delayed the finalization of the administration. Evans Decl. ¶6 n.3. Accordingly, Plaintiffs respectfully request that the Court order that no claims received after September 25, 2025, or any responses to deficiency and/or rejection notices received after October 15, 2025, be included in the distribution.

### B. Deficient and Ineligible Claims

#### 1. Claims Rejected for Reasons Other than Inadequate Documentation

SCS identified 37 claims that it recommends for rejection. Evans Decl. ¶7(b). Included in this category are: (i) claims which were submitted by individuals who were not members of the Settlement Class; (ii) duplicate claims filed; (iii) claims which were withdrawn by the filer; and (iv) claims which were filed by Persons who were excluded from the Settlement Class. *Id.*; Exhibit C. SCS sent these claimants rejection notices advising them of SCS's determination. *Id.*; Exhibit D (sample ineligibility notice). To date, only one of these ineligible claimants has contested SCS's determination, but has failed to provide the Identification Number or other information sufficient to prove membership in the Settlement Class. *Id.* 7(b)(i); Exhibit E. Accordingly, and pursuant to the Preliminary Approval Order (granting SCS the ability to determine whether claims are valid, deficient or rejected, ¶21(c)), Plaintiffs respectfully request that the Court reject the 37 ineligible claimants listed on Exhibit C of the Evans Declaration.

### III. DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized

3

Claimants on a *pro rata* basis whose distribution payments calculate to $5.00 or more (the "Initial Distribution"). Evans Decl. ¶9(a). Based on the substantial experience of Lead Counsel and SCS in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel and SCS propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*. ¶9(c).

After the initial distribution of the Net Settlement Fund, the Claims Administrator shall make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any monies remain in the fund six (6) months after the initial distribution of such funds shall be used; (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants who would receive at least a $5.00 payment; and (ii) second, to pay any additional Administration Costs incurred in administering the Settlement. *Id.* ¶9(b).

If, after this payment any balance remains in the Settlement Fund courts often have authorized additional re-distributions to claimants from those remaining funds, when economically feasible. *See e.g.*, *Loop Industries*, 2023 WL 6458976, at *1; *In re Patriot National, Inc. Sec. Litig,*, 2021 WL 1040462, at *1-2 (S.D.N.Y. Mar. 18, 2021); *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255, at *1-2 (N.D. Tex. Aug. 4, 2021). In circumstances where a second distribution is economically unfeasible, however, courts allow for the remaining settlement funds to be donated to a non-sectarian, non-profit charitable organization selected by Lead Counsel. *See In re XL Fleet Corp. Sec. Litig.*, 2025 WL 2602616, at *2 (S.D.N.Y. Sept. 4, 2025); *In re Sunedison, Inc. Sec.*

*Litig.*, 2020 WL 5038001, at *2 (S.D.N.Y. Aug. 26, 2020); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022).

Accordingly, should any balance remain in the Net Settlement Fund after the initial distribution and payments, Plaintiffs request this Court authorize the Claims Administrator to make an additional re-distribution, if economically feasible, to Authorized Claimants. These distributions will be made to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $5.00 from such second distribution, after payment of the estimated costs of fees to be incurred in administering the Net Settlement Fund and in making this second distribution if economically feasible. Evans Decl. ¶9(b). Furthermore, Plaintiffs request the Court Order that six (6) months after a second distribution, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claim Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund be donated to the *cy pres* recipient selected by Lead Counsel, Howard University Investor Justice & Education Clinic or any of its not-for-profit successors.

## IV.     RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. In *Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020), for example, the court found that:

> [a]ll persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."

*See also Patriot National*, 2021 WL 1040462, at *2; *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

Accordingly, Plaintiffs respectfully request the Court: (a) release and discharge all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Distribution Order, *provided that* such released persons acted in accordance

6

with the Stipulation, the Judgment, and the Distribution Order. *In re Patriot National, Inc. Sec. Litig.*, 2021 WL 1040462.

## V. RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that SCS may (i) discard paper or hard copies of Claims and supporting documentation not less than one (1) year after distribution of the Net Settlement Fund; and (ii) destroy the electronic copies of the Claims and supporting documents not less than three (3) after all funds have been distributed. This is the customary document retention period SCS uses to prevent additional costs to the Settlement Class for storage expenses and related fees. *See* Evans Decl. at ¶9(f); *In re Merrill Lynch & Co., Inc. Secs., Derivative and ERISA Litig.*, 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010); *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court enter the Distribution Order submitted herewith, so that Settlement Class Members who submitted valid claims may receive their *pro rata* share of the Net Settlement Fund.

Dated: December 23, 2025                          Respectfully submitted,

<u>/s/ Phillip Kim</u>
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
Michael Cohen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: mcohen@rosenlegal.com

*Counsel for Plaintiffs and the Class*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(c), that the PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS contains 2057 words, as counted by Microsoft Word, excluding the cover page, this certification of compliance, the table of contents, the table of authorities, and the signature block; and that each complies with the formatting rules set forth in Section II.4.D of the Individual Practices of Judge Victor Marrero.

                              /s/ Phillip Kim